[No. 38428. Department Two. August 24, 1967.]

THE BROWER COMPANY et al., Appellants, v. BAKER & FORD COMPANY, Respondent.*

*Lycette, Diamond & Sylvester,* by *Lyle L. Iversen,* for appellants.

*Bruce T. Rinker,* for respondent.

HAMILTON, J.—Plaintiffs, as subcontractors, commenced this action against defendant, their prime contractor, to recover the balance allegedly due for work performed in constructing a radar transmitter station for the federal government in Alaska. Judgment was entered in favor of defendant on the basis of evidence indicating an overpayment. Plaintiffs appeal.

*Reported in 431 P.2d 595.

The work involved was extensive, urgent, and unique. Plaintiffs' portion of the project included supplying, fabricating and installing flooring and acoustical tile in the buildings designed to house the radar equipment. Several changes in design and plans were made as the work progressed. When the work was completed, the parties were unable to agree as to the amounts due and owing under the subcontract as modified or altered by the various change orders put into effect during construction. This lawsuit followed. The trial was lengthy, the testimony protracted, and the issues presented were predominantly factual. No useful purpose would be served in extensively detailing the evidence.

Plaintiffs at all times contended that they fully performed under the basic subcontract and are entitled to the fixed sum or sums therein agreed upon, and, further, that as changes developed in the project they submitted estimates of the added costs created by such changes which quotations, when accepted and acted upon by the parties, in turn became fixed sum additions to the basic subcontract.

Defendant, however, contended that plaintiffs did not perform all of the work contemplated by the basic subcontract, and that the parties at the outset agreed that any added costs arising out of probable changes, with one exception, would be determined and adjusted at the conclusion of plaintiffs' work. In this latter respect, defendant asserts plaintiffs' estimates submitted prior to commencement of work under the change orders involved were not firm bids but simply preliminary approximations and subject to re-evaluation when the work was completed.

The evidence in support of the respective contentions of the parties was conflicting. The trial court, sitting without a jury, weighed and evaluated the evidence and subscribed to defendant's theory. Under this theory, the trial court found the overpayment and entered judgment accordingly. On appeal, plaintiffs essentially attack the trial court's findings of fact with respect to the extent of the flooring work contemplated by the basic subcontract, the extent of plaintiffs' performance of both the flooring and acoustical work,

and the arrangement between the parties as to the pricing of any changes in the course of the work.

The basic subcontract involving the flooring provides, in pertinent part, as follows:

3. That the labor and materials to be furnished, and the work to be performed by the SUBCONTRACTOR are as follows: Complete installation of floor covering and plywood and tile panels and fasteners in strict compliance with the original contract documents. Freight on panels from Seattle to jobsite by Baker & Ford Co.

. . . .

(d) The CONTRACTOR may, without invalidating this SUBCONTRACT, order extra work or make changes by altering, adding to, or deducting from the work; the price herein being adjusted accordingly. All such work shall be executed under the conditions hereof, and of the MAIN CONTRACT, except that any claim for extension of time caused thereby must be agreed upon at the time of ordering such change.

The acoustical tile work was done under a letter confirming plaintiffs' bid.

Defendant presented testimony to the effect that it was contemplated under the flooring contract that plaintiffs would furnish 103,000 square feet of flooring, and install 57,000 square feet thereof. Further evidence adduced by defendant indicated that during the course of the work plaintiffs' installing obligation was reduced to 22,320 square feet, with the remaining footage being installed by another contractor. Thus, defendant asserted, it was entitled to adjust the stated price of the subcontract under paragraph (d) thereof, and the trial court so found.

Plaintiffs contend that the trial court erred in receiving evidence relating to the square footage involved upon the basis that such violates the parol evidence rule. We cannot agree.

None of the contract documents introduced in evidence reveal the amount of footage involved nor the amount to be installed by plaintiffs or any other contractor. For aught that appears in the basic subcontract, plaintiffs were required to install all of the flooring. Admittedly

plaintiffs did not do so, for they contended that provisions contained in the pertinent specifications contemplated some installation by others. The extent of plaintiffs' obligation, as well as that of other contractors, to install flooring was thus rendered unclear and in this respect the pertinent contract documents were ambiguous. The trial court was entitled to receive and consider extrinsic evidence to clarify the ambiguity. *Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 411 P.2d 868 (1966). We find no error in the admission of the challenged evidence.

■ The remaining contentions of plaintiffs with respect to the deduction claimed by defendant upon the flooring subcontract, and allowed by the trial court, go to the weight, credibility, and evaluation of the testimony of the witnesses. In this respect the trial court accepted defendant's evidence, which, in turn, amply supports the trial court's finding. We will not disturb such a finding on appeal. *Wells & Wade Hardware, Inc. v. Wenatchee*, 64 Wn.2d 103, 390 P.2d 701 (1964).

Plaintiffs next challenge an adjustment in price claimed by defendant and allowed by the trial court with respect to the first change ordered in the course of the flooring work. We are persuaded that the trial court erred with regard to this item.

Briefly, the circumstances are as follows: Early in the work, the government determined that asphalt tile on certain of the floor panels would not be suitable and directed that vinyl tile be applied and that the underside of the panels be sealed. Defendant called for an estimate from plaintiffs as to the probable cost of the change. Plaintiffs submitted a figure in excess of $45,000, which defendant rejected. Thereafter, plaintiffs submitted a revised figure in the neighborhood of $43,000. Again, defendant rejected the estimate, following which plaintiffs and defendant mutually agreed upon the sum of $35,000. Plaintiffs then performed the work. How and upon what basis the $35,000 figure was reached is not spelled out in the evidence, nor does the evidence indicate what items in plaintiffs' initial cost breakdowns were diminished or deleted in arriving at the

agreed price. Now, however, defendant contends that an item of $2,273.42, allocated to labor subsistence and accompanying markups appearing in plaintiffs' initial cost breakdowns should be deducted because plaintiffs did not in fact furnish such subsistence. The trial court agreed.

In this instance, the parties after negotiation reached a firm agreement as to a lump sum for the work involved in the change ordered by the government. The cost items included in or discarded from the lump sum amount were not set forth in their negotiations. Whether the subsistence item was retained in the final figure agreed upon cannot now be determined except upon the basis of speculation. The trial court's finding that the subsistence item was included in the final figure and must now be deducted is, thus, without evidentiary support. Plaintiffs are, accordingly, entitled to recover the claimed deduction.

The remaining items in controversy revolve about the trial court's determination that plaintiffs' cost estimates on subsequent changes in the work did not constitute firm bids, and that plaintiffs did not furnish some of the services or perform some of the work embraced within the change estimates or within the acoustical phases of their contract. With respect to these items plaintiffs contend the evidence adduced compels the conclusion that each estimate on the changes, and each phase of the acoustical work, amounted to lump sum agreements from which no deductions could rightfully be taken. We cannot agree.

Defendant's evidence clearly and definitively spelled out an understanding between the parties that, because of the uniqueness and extreme urgency of the project, the pricing on any changes occurring during the course of the floor work would be subject to later adjustment. Plaintiffs' evidence controverted this arrangement and indicated that their estimates were submitted, received, approved, and settled prior to the commencement of any work on a change order. Likewise, there is disagreement as to whether plaintiffs were entitled to and did furnish any labor subsistence in connection with their acoustical work or were at fault in installing certain tile at variance with

the specifications, for which items they sought recompense. Factual issues were thus presented as to the arrangement and circumstances under which the parties worked. The trial court believed defendant's version of events, discounted the change order estimates for work and services not furnished, adjusted the acoustical work agreement downward to allow for services not performed and for defective installation, and entered findings accordingly. The trial court's findings, to which plaintiffs have assigned error, are supported by substantial evidence and will not be disturbed. *Wells & Wade Hardward, Inc. v. Wenatchee, supra.* These findings in turn support the conclusions of law with which plaintiffs quarrel. *Ladum v. Utility Cartage, Inc., supra.*

■ Plaintiffs next contend the trial court committed error in refusing to admit evidence concerning defendant's relations with and payments received from the federal government in connection with the work performed by plaintiffs. We are satisfied the proffered evidence, if it could be reasonably segregated and isolated from other services and material furnished on the job by the prime contractor, would be admissible for such bearing as it would have upon the status of plaintiffs' estimates, *i.e.*, whether such were firm bids or merely preliminary approximations. The trial court, however, in rejecting the offer, relied upon defendant's assertions that the total project involved substantially more than $5 million in work, material, and services, of which plaintiffs' portion was but a small part, and that segregation and itemization would be time consuming, impractical, and virtually undecipherable. Furthermore, the trial court was of the view that resolution of the dispute between the parties was primarily dependent upon the contractual relationship between them rather than between defendant and the federal government. In this latter view, the trial court was correct. *James Stewart Co. v. Dennett-Robertson Elec., Inc.*, 291 F.2d 147 (9th Cir. 1961). Under all the circumstances, we are not persuaded that the trial court's action in refusing to admit the proffered evidence

866

amounted to reversible error. If as plaintiffs contend, defendant received excessive amounts from the federal government, plaintiffs should not be permitted to compound the offense by sharing in the overpayments.

We find no reversible error in the remaining assignments of error advanced by plaintiffs.

The judgment entered in favor of defendant in the sum of $1,804.32 is vacated, and the cause is remanded for entry of judgment on behalf of plaintiffs in the sum of $469.10, together with plaintiffs' costs.

FINLEY, C. J., HUNTER, J., and DENNEY, J. Pro Tem., concur.