124 P.3d 305 (2005)
130 Wash.App. 653
Casey DALTON, Individually, and as Personal Representative of the Estate of Dirk Devlin Dalton, Deceased; and James J. Hines, individually, Appellants,
v.
STATE of Washington, et al., Defendants,
Craig Ambroson, M.D., a physician; Cindy Rae Norman, M.D., a physician; Spectrum Emergency Care, Inc., a Missouri Corporation; and Kimberly Grijalva Cross Berry, a former licensed foster mother, Respondents.
Nos. 19517-1-III, 22530-5-III.
Court of Appeals of Washington, Division 3, Panel Eight.
August 25, 2005.
Publication Ordered December 8, 2005.
*306 Ron Perey, Carla Tachau Lawrence, Attorneys at Law, Seattle, WA, James W. Grow, Law Office of James W. Grow, Jr., PLLC, Lewiston, ID, for Appellants.
Marc A. Lyons, Ramsden & Lyons, Coeur D'Alene, ID, Kimberly G.C. Berry, Richland, WA, Christopher H. Howard, Kelly D. Cadigan-McGee, Holland, Knight LLP, Seattle, WA, for Respondents.
KURTZ, J.
¶ 1 In this appeal, the appellants vigorously dispute the trial court's findings and, accordingly, ask us to reverse its order granting the respondents' CR 60(b) motion for relief from judgment. The trial court chose to believe a declarant who testified that her written statement had been changed after she signed it. There was other evidence that indicated otherwise. But, as the court has often stated, "an appellate tribunal is not permitted to weigh the evidence or the credibility of the witnesses." Vermette v. Andersen, 16 Wash.App. 466, 470, 558 P.2d 258 (1976). We have no role of assessing credibility and weighing evidence; that role belongs to the trial court. Therefore, we *307 affirm the court's conclusion that the respondents are entitled to relief under CR 60(b)(4).
¶ 2 The declaration in question was filed by the appellants following a defense verdict in the trial of the appellants' claim of wrongful death of their son, four-year-old Dirk Dalton, who died of injuries from beatings he received at the hands of a foster parent. Dirk's parents, Casey Dalton and James Hines (the Daltons) sued the doctors who treated Dirk in the days before his death, alleging the doctors were negligent because they failed to recognize his injuries were the result of abuse. The Daltons also sued Spectrum Emergency Care,[1] the agency that had placed one of the doctors in her emergency room position.
¶ 3 After entry of the adverse jury verdict, the Daltons unsuccessfully moved for a new trial, based in part upon the declaration of Starla Beckley. It is this declaration, which Ms. Beckley now repudiates, that is the subject of this appeal.
¶ 4 In that declaration, Ms. Beckley stated that juror Donald Polumsky had told her during jury selection that he believed the mother was an opportunist seeking to profit from her child's death. The juror filed an opposing declaration that asserted no bias had entered into jury deliberations, but he did not directly deny that he had made that statement to Ms. Beckley. On appeal from the trial court's denial of the motion for a new trial, this court reversed and held the seating of a juror who concealed his bias denied the Daltons their right to a fair and impartial jury. Dalton v. State, 115 Wash. App. 703, 63 P.3d 847 (2003).
¶ 5 When Ms. Beckley read about the appellate decision in her newspaper, she contacted the doctors' attorneys and denied making the statement. Thereafter, the trial court held a hearing to consider the defendants' motion for CR 60(b)(4) relief. At that hearing, Ms. Beckley and the Daltons' attorneys testified. Three attorneys testified that Ms. Beckley had made the statement in their presence. Despite this testimony, the trial court found that the declaration had been altered by one of the Daltons' attorneys, after Ms. Beckley signed it. For that reason, the court struck the declaration from the record.
¶ 6 The Daltons appeal. They contend the doctors' CR 60(b)(4) motion was untimely and the doctors waived any challenge to Ms. Beckley's declaration. They also contend the trial court's finding that Ms. Beckley was credible is not supported by the evidence, and the court erred when it ruled the testimony of James Grow's character witnesses was irrelevant. This court stayed the mandate in the earlier appeal pending the outcome of this second appeal.
¶ 7 The parties agree that Ms. Beckley gave the declaration in the following context: Shortly after the adverse jury verdict in the Daltons' lawsuit, plaintiff Casey Dalton went to Ms. Beckley's place of business to have her older son's hearing aid serviced. At that time, Ms. Beckley told Ms. Dalton that a juror had made statements to her that raised questions in her mind about the juror's ability to be fair. Ms. Beckley agreed to meet with Ms. Dalton's attorney. She signed a declaration that evening. The Daltons subsequently filed a signed declaration that became the basis for their motion for a new trial and, ultimately, for this court's reversal of the jury verdict. Specifically, the declaration stated that the juror had told Ms. Beckley that he thought Ms. Dalton was an opportunist, who wanted to profit from her child's death.
¶ 8 At the hearing on those motions, the defense lawyer gave Ms. Beckley the declaration and asked her to read it. He then asked her, "Did you sign that document?" Report of Proceedings (RP) at 16. Ms. Beckley answered "no." She said it was different from the document she actually signed because it contained an additional statementthe juror told her he thought Casey Dalton was an opportunist trying to profit from her child's deaththat was not true and was not her statement. Ms. Beckley testified that she told the plaintiffs' lawyers *308 what the juror had told her about a run-in one of his family members had with Ms. Dalton in a video store. She recalled that Mr. Grow commented he did not believe that statement would be enough to get an appeal. And, Mr. Grow telephoned Ron Perey in her presence and talked to him about it, after which "[t]hey decided to go ahead and have [her] do the affidavit anyway." RP at 19. Ms. Beckley said that the two-page declaration she signed that night did not include the "opportunist" language. RP at 21. And, she testified that Mr. Grow did not give her a copy of the original declaration.
¶ 9 When Ms. Beckley returned home, she discussed what had happened with her employerwith whom she livedthe owner of the hearing aid store. He asked her why she would want to get involved if the information she had was not enough to make a difference. As a result, Ms. Beckley testified that she called Mr. Grow's office the next morning and asked the woman who answered the phone to tear up the declaration. She testified that following the telephone conversation, she sent a fax, which stated:
I was told a secretary had destroyed the affidavit left in your office. I am unable to proceed any further in helping you with the Dalton appeal. I have to look out for what is in our best interests. To be slandered by the media would not help my family the Dalton case or myself. I am sincerely sorry about this but destroying John's business and myself would not be beneficial to anyone. As previously state [sic] if the affidavit left in your office has not been destroyed please do so at this time. It was signed under extreme stress.
Ex 2. Exhibit 2 is a copy of the fax. It is dated March 21, a Tuesday, but is unaccompanied by any transmission sheet. Mr. Grow testified that he never saw the fax.
¶ 10 Ms. Beckley said she subsequently received a telephone call from a woman who identified herself as Mr. Grow's employee. The woman asked Ms. Beckley to come into the office, which she did the next morning.
¶ 11 Ms. Beckley testified that Mr. Grow met her in the reception area and gave her a revised document. Mr. Grow later testified that the only change he had made was to correct Ms. Beckley's age. According to Ms. Beckley, the revised declaration now contained the "opportunist" language. RP at 27. She refused to sign it, telling Mr. Grow that she did not recall making the "opportunist" statement. RP at 27. Mr. Grow responded that Mr. Perey told him Ms. Beckley did make the statement.[2] She testified that she took the revised document home "to think about it and to review it, because I could not remember those statements. I could not remember that conversation that he, Mr. Grow, said I had with Mr. Perey." RP at 28.
¶ 12 The Daltons' witnesses, including their attorneys, gave a quite different account of Ms. Beckley's statements at the initial meeting and of the events following the meeting. One of the attorneys produced his notes from the meeting that contained Ms. Beckley's disputed statement in quotation marks. Another attorney testified that he heard the statement. Mr. Grow testified at the hearing. He stated that, during his interview of Ms. Beckley, he typed notes on his laptop computer. Mr. Grow remembered that Ms. Beckley repeated the "opportunist" statement several times during the interview. And, the declaration she signed that night had the opportunist language in it. He, therefore, filed the declaration, after taping it together and informing the doctors it had been torn at Ms. Beckley's direction because she did not want to get involved.
¶ 13 Following the hearing, the court issued two memorandum opinions. The first, dated October 6, 2003, states that the issue is whether Ms. Beckley's declaration "has sufficient indicia of trustworthiness to be used to reverse a jury verdict on the basis of juror bias." Clerk's Papers (CP) at 4935. In the court's view, it was presented with an "interesting dichotomy." CP at 4935. That is, "[i]f the Court believes the recent testimony of Ms. Beckley, . . . then the March 15, 2000, [declaration] must be stricken (no matter *309 how it came into being)." CP at 4935. But, if it disbelieves her testimony, "it would do so because her credibility now has been impeached.. . ." CP at 4935. It concludes, "The test then is whether that first statement, with all of its attendant difficulties, possesses that sufficient indicia of trustworthiness to overturn or set aside a unanimous jury verdict and final judgment. This Court finds it does not." CP at 4936.
¶ 14 The second memorandum opinion addressed the Daltons' request that the court make findings regarding Ms. Beckley's testimony, as well as the testimony of Mr. Anderson, Mr. Grow, Todd Richardson, Sherri Imel, Mr. Dalton and Ms. Dalton. The court, in declining to make findings, stated that "their testimony, except for that of Ms. Beckley, did not have any relevance to the primary issue here." CP at 4981. It concluded, "Ms. Beckley made a March, 2000, declaration. She then in March, 2003, repudiated that statement. There is no dispute as to these facts. This Court has now, based upon Ms. Beckley's undisputed testimony repudiating that declaration, determined it lacks trustworthiness." CP at 4982.
¶ 15 Subsequently, the Court of Appeals ordered the trial court to enter findings. The trial court's findings, drafted by counsel for Dr. Ambroson, stated in part as follows:
 On March 15, 2000, Ms. Beckley signed a declaration in support of the plaintiffs' motion for new trial.
 Mr. Grow subsequently altered the declaration by adding the following language: "[The juror] told me that he thought that Casey Dalton was an opportunist trying to profit from her child's death." CP at 5040.
 Ms. Beckley did not make the foregoing statement and did not authorize counsel to add that statement to her declaration after she signed it.
 Ms. Beckley's testimony at the hearing in which she denied the juror made the statement was credible.
 Her testimony that the declaration was altered without her knowledge or permission was credible.
 The March 15, 2000 declaration lacks trustworthiness.
 The evidence is sufficient to find fraud, misrepresentation and/or other misconduct under the standards of CR 60(b)(4).
¶ 16 The court also signed findings and conclusions prepared by counsel for Dr. Norman and Spectrum Emergency Care that more closely followed its memorandum opinions. It concluded that "if Ms. Beckley were sufficiently impeached to disbelieve her, it would require disbelief of her earlier declaration as well." CP at 5053. In addition, the court found that Mr. Grow admitted having changed the original document to correct Ms. Beckley's age, and filed the revised declaration without informing counsel of that change. The trial court concluded, as follows:[3]
 Ms. Beckley's live testimony prevails over her earlier declaration. See Sun Mountain, 84 Wash.App. 608, 929 P.2d 494.[4]
 The declaration had been altered without informing counsel of that fact.

*310  The court struck the declaration based on its finding the declaration lacked "sufficient indicia of trustworthiness" to be used to reverse a jury verdict on the basis of juror bias.
 If Ms. Beckley was sufficiently impeached to disbelieve her, it would require disbelief of her earlier declaration as well.
 Ms. Beckley's live testimony made clear that she did not discuss with Plaintiffs' counsel in 2000 any conversation she had with the juror that he believed that Casey Dalton was an opportunist trying to profit from her child's death. In other words, her initial declaration was false, or, at a minimum, her testimony is without credibility.
¶ 17 We first address whether the doctors filed their CR 60(b)(4) motion within a reasonable time. Specifically, is the doctors' motion timely in light of the fact they resisted the motion the Daltons made, immediately following trial, to depose and perpetuate the testimony of Ms. Beckley and the juror, Donald Polumsky?
¶ 18 The relevant circumstances include the following: On January 4, 2001, the Daltons moved the trial court under CR 27(b) to perpetuate the testimony of Mr. Polumsky and Ms. Beckley, in the event of further proceedings in trial court following the appeal. They cited the fact the appeal would be heard at the earliest one and one-half years into the future, i.e., mid-2002. The Daltons argued that the ability of Ms. Beckley and Mr. Polumsky to recall their conversation in February 2000 would likely be more accurate in January 2001 than after the appeal was decided. The Daltons specifically argued that, because Mr. Polumsky would be 70 years old at the time of the projected decision in the appeal, any delay increased the risk of losing his testimony. The doctors opposed the Daltons' motion to perpetuate. The court denied the motion, stating "Ms. Beckley's claims are a part of the record, as is [the juror's] denial. There is no need to depose either person to preserve the record further." CP at 4416.
¶ 19 CR 60(b) provides that motions brought under its provisions must be made within "a reasonable time." The facts and circumstances of the particular case are considered in determining whether a movant has filed its CR 60(b) request within a reasonable time. Luckett v. Boeing Co., 98 Wash.App. 307, 312, 989 P.2d 1144 (1999). The critical period is the period between when the moving party became aware of the reason to vacate the judgment and when the moving party filed its motion. Id. In determining whether the motion is timely, the court considers whether the delay has prejudiced the nonmoving party and whether the moving party has a good reason for failing to act sooner. Id.
¶ 20 The Daltons rely on the fact their counsel had notified the doctors when they originally filed Ms. Beckley's declaration that it had been torn in half at her request because she did not want to get involved. And, since the doctors knew the declaration was from a reluctant witness, they should not have resisted the Daltons' efforts to schedule an evidentiary hearing at the time of the motion for a new trial.
¶ 21 We see no waiver in these circumstances. Ms. Beckley's reluctance to get involved in this case does not mean opposing counsel should have suspected that her declaration may have contained material alterations by the Daltons' attorneys. The doctors here had no reason to suspect the declaration may have been entered as a result of fraud, misrepresentation, or misconduct. The doctors reasonably believed the declaration accurately set forth Ms. Beckley's statements. It follows that they did not waive a later court inquiry into Ms. Beckley's statement, when additional facts became known, just because they saw no reason for her testimony to be perpetuated at the time of the motion for a new trial.
¶ 22 The Daltons cite the Restatement (Second) of Judgments § 70, which provides that a party seeking relief from a judgment on the basis of fraud must have acted with due diligence and "[w]hen his claim is based on falsity of the evidence on which the judgment was based, show that he had made a reasonable effort in the original action to ascertain the truth of the matter." RESTATEMENT *311 (SECOND) OF JUDGMENTS § 70(2)(c) (1982) (hereinafter RESTATEMENT). A comment to the Restatement states that "the critical considerations usually are whether the claim of fraud is well substantiated and not merely asserted at large and whether in the original action the victim had pursued reasonable precautions against deception." RESTATEMENT, supra, § 70 cmt. c. Further, given liberal discovery rules, "only a well concealed or unforeseeable fraud is likely to survive a reasonably diligent effort to ascertain the truth." RESTATEMENT, supra, § 70 cmt. d.
¶ 23 Our holding is consistent with the above-quoted Restatement provisions. As identified in comment c, a "critical consideration" is whether the victim had pursued "reasonable precautions against deception" in the original judgment. Here, the doctors acted reasonably in relying upon the filed declaration as the actual, sworn statement of Ms. Beckley. Therefore, their opposition to the Daltons' motion to perpetuate the testimony does not mean that they failed to pursue "reasonable precautions against deception."
¶ 24 The second issue on appeal is whether substantial evidence supports the findings of the trial court that plaintiffs' counsel engaged in fraud, misrepresentation, or other misconduct and thereby prevented the defendants from fully and fairly presenting their case. Specifically, does the evidence support the court's findings that Ms. Beckley did not say the juror told her he thought Dirk's mother was an opportunist and that counsel added the "opportunist" language to the declaration after Ms. Beckley signed it?
¶ 25 The court entered the following findings of fact and conclusions of law:
3. After Ms. Beckley signed the March 15, 2000 declaration, Mr. Grow made alterations to the declaration, adding additional statements. The additional statements added to the declaration included the following language:
"[The juror] told me that he thought that Casey Dalton was an opportunist trying to profit from her child's death."
4. Ms. Beckley did not make the statement referenced in paragraph 3 above, nor did she authorize plaintiffs' attorneys to add any statements to the March 15, 2000 declaration after it was signed.
5. After altering Ms. Beckley's March 15, 2000 declaration, the plaintiffs' attorneys filed a photocopy of the declaration representing it to be a torn and re-taped copy of the original declaration executed by Ms. Beckley.
. . . .
3. The court further concludes that the defendants have met their burden of proof and the record establishes fraud, misrepresentation and/or other misconduct on the part of the plaintiffs, sufficient to obtain the relief that defendants request under the standards of CR 60(b)(4).

CP at 5039-42 (emphasis added).
¶ 26 CR 60(b) provides that the court may relieve a party from an order for fraud, misrepresentation, or other misconduct. The party requesting the relief must show misconduct that prevented a full and fair presentation of its case. And, proof of misconduct must be clear, cogent, and convincing. Peoples State Bank v. Hickey, 55 Wash.App. 367, 371-72, 777 P.2d 1056 (1989); see also Lindgren v. Lindgren, 58 Wash.App. 588, 596, 794 P.2d 526 (1990); Goodman v. Bowdoin College, 380 F.3d 33, 48 (1st Cir.2004), cert. denied, 543 U.S. 1055, 125 S.Ct. 919, 160 L.Ed.2d 779 (2005). (Extraordinary remedy of CR 60 relief requires clear and convincing evidence of misconduct that prevented a full and fair presentation or preparation of movant's case.)
¶ 27 In Hickey, the court stated:
Courts interpreting the federal rule state that one who asserts that an adverse party has obtained a verdict through fraud, misrepresentation or other misconduct has the burden of proving the assertion by clear and convincing evidence. The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. For this reason, the conduct must be such that the losing party was prevented from fully and fairly presenting its case or defense.
*312 Hickey, 55 Wash.App. at 372, 777 P.2d 1056 (emphasis added) (citation omitted); see also CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2860 at 312 (1995) (quoting Assmann v. Fleming, 159 F.2d 332, 336 (8th Cir.1947)).
¶ 28 Generally, "substantial evidence must be `highly probable' where the standard of proof in the trial court is clear, cogent, and convincing evidence." In re Marriage of Schweitzer, 132 Wash.2d 318, 329, 937 P.2d 1062 (1997) (quoting In re Detention of LaBelle, 107 Wash.2d 196, 209, 728 P.2d 138 (1986)). Our review of the sufficiency of the evidence to support the findings is limited to determining whether the evidence shows that fraud, misrepresentation, or misconduct was "highly probable." Schweitzer, 132 Wash.2d at 329, 937 P.2d 1062.
¶ 29 The situation here is similar to that presented in Vermette v. Andersen, 16 Wash. App. 466, 558 P.2d 258 (1976). In that case, the court determined that the testimony of one of the witnesses was credible, even though that testimony was contradicted by the testimony of other witnesses. In Vermette, the court held:
On appeal our inquiry is limited to ascertaining whether there is substantial evidence to support the trial judge's finding that the parties were mistaken in believing that the land was capable of supporting a residential dwelling. Evidence that is sufficiently substantial to support an ultimate fact required to be established by a preponderance of the evidence may not be sufficiently substantial to support an ultimate fact that must be proved by clear, cogent, and convincing evidence. Nevertheless, an appellate tribunal is not permitted to weigh the evidence or the credibility of the witnesses. We take this as meaning that our function is to determine whether any interpretation of the facts will satisfy the standard of proof. Even though we might disagree with the trial judge's evaluation of the evidence, we are compelled to affirm his findings unless there is no reasonable construction of the facts under which the evidence could be classified as clear, cogent, and convincing. Thus, substantial evidence, which by itself is sufficient to satisfy the clear, cogent, and convincing standard, is not made less substantial by the presence of contradictory testimony, which the trial court may have disregarded as not being credible.

Id. at 470, 558 P.2d 258 (emphasis added) (citations omitted).
¶ 30 Likewise, Ms. Beckley's testimony constitutes substantial evidence that is sufficient to satisfy the clear, cogent, and convincing standard even though the rest of the witnesses who participated in the meeting at Mr. Grow's office contradicted her testimony.
¶ 31 In so holding, we acknowledge the conflict in the evidence. Ms. Beckley had reason to retreat from her earlier declaration given her stated fear that her involvement in the case would adversely affect her employer's business. Indeed, the trial court's memorandum decision, entered before this court ordered it to enter findings, evidenced its reluctance to make the findings now before us. Instead, the court attempted to avoid this question by characterizing the testimony as presenting a "dichotomy." CP at 4935. That is, if it "believe[d] the recent testimony of Ms. Beckley, ... then the March 15, 2000, [declaration] must be stricken (no matter how it came into being)." CP at 4935. But, if it disbelieved her testimony, "it would [strike the declaration] because her credibility now has been impeached. . . ." CP at 4935. Nevertheless, when pressed, the trial court decided to accept Ms. Beckley's testimony. And, we have no power to disturb that assessment.
¶ 32 The Daltons also argue Ms. Beckley's testimony is insufficient because, in their estimate, it is equivocal. They cite her testimony in response to the following question posed by plaintiffs' counsel on cross-examination: "Are you saying that Mr. Grow was trying to get you to sign something that you didn't recall saying or are you saying Mr. Grow was trying to get you to sign something that you never said and he made up?" RP at 61. She testified: "To the best of my ability, I never said it. To the best of my recollection, I never said it." RP at 61.
¶ 33 We are not persuaded that Ms. Beckley's testimony, when read as a whole, is *313 equivocal. She states repeatedly that the juror did not make the "opportunist" statement, she did not state the juror made the statement, and the "opportunist" statement was not in the original declaration that she signed. Ms. Beckley's testimony on cross-examination is consistent with her testimony on direct examination.
¶ 34 The next question is whether the court's findings are sufficient to support its conclusion that the declaration must be struck under CR 60(b)(4). In this regard, it is important to remember that relief from judgment under CR 60(b)(4) requires the movant to show misconduct that prevented it from fully and fairly presenting its case. See Goodman, 380 F.3d at 48. "The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. For this reason, the conduct must be such that the losing party was prevented from fully and fairly presenting its case or defense." Hickey, 55 Wash.App. at 372, 777 P.2d 1056; see also WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2860 at 312.
¶ 35 The addition of the "opportunist" language to the declaration was critical to the establishment of concealed juror bias, which formed the basis for the reversal of the defense verdict. The court's findings that Ms. Beckley did not make this statement and that the Daltons' counsel added the language after she signed the declaration support its conclusion that misconduct occurred. This misconduct prevented the defendants from fully and fairly presenting their case in opposing the Daltons' motion for a new trial.
¶ 36 In summary, the court's findings of misconduct are supported by the record, and the court's conclusion that the respondents are entitled to relief under CR 60(b)(4) is supported by the findings.
¶ 37 The third issue is whether the trial court abused its discretion when it refused to hear witnesses the Daltons wanted to call on the issue of Mr. Grow's reputation for truthfulness. And, if the court abused its discretion, was its decision harmless error?
¶ 38 ER 608(a) provides that:
The credibility of a witness may be attacked or supported by evidence in the form of reputation, but subject to the limitations:. . . (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise.
(Emphasis added.) Here, Ms. Beckley's testimony that Mr. Grow altered the declaration after she signed it constitutes an attack on his character for truthfulness. We, therefore, disagree with the trial court's finding "that the credibility of the witnesses called by Plaintiffs are material only to the extent that they impeach the credibility of Ms. Beckley as a witness and makes no further finding as to the credibility of those witnesses." CP at 5051. And, the court abused its discretion when it so ruled.
¶ 39 The question then is whether the trial court's ruling prejudiced the Daltons. The trial court was of the view that the resolution of the dispute was primarily dependent upon its determination of Ms. Beckley's credibility. But the motion before the court was for relief under CR 60(b)(4), which requires a showing of fraud, misrepresentation, or misconduct. The trial court could not believe Ms. Beckley without also finding that Mr. Grow altered the original declaration. While the trial judge here tried very hard to resolve this dispute without impugning Mr. Grow's character for truthfulness (and its efforts to do so are evidenced by its memorandum decisions and findings), ultimately it did impugn Mr. Grow's character when it found that he had altered the declaration to add the "opportunist" language.
¶ 40 But we question whether the error prejudiced the Daltons. Cf. Brower Co. v. Baker & Ford Co., 71 Wash.2d 860, 865-66, 431 P.2d 595 (1967). The trial court chose to believe Ms. Beckley in the face of the testimony from three lawyers that contradicted her version of events. In doing so, the court disregarded evidence, both direct and circumstantial, that belied her testimony. Because the evidence supporting Mr. Grow's credibility was ample, even without the proffered character witnesses, and because the trial court apparently believed Ms. Beckley's *314 testimony, we cannot see how the character evidence of Mr. Grow's reputation for truthfulness would have changed the trial court's decision. Any error in refusing to hear Mr. Grow's reputation witnesses was harmless.
¶ 41 Fourth, the Daltons assert the trial court committed an error of law when it did not apply the general rule that recantation testimony is seldom considered reliable or sufficient to support a challenge to a previous court decision. See State v. Macon, 128 Wash.2d 784, 801-02, 911 P.2d 1004 (1996).
¶ 42 We hold that Ms. Beckley's testimony at the hearing was not recantation testimony. She did not recant her statements in her declaration. She testified that the statements in the declaration filed in the trial court, and relied upon by this court in reversing the defense judgment, were not her statements and were not in the declaration that she had signed. Therefore, the trial court did not err when it refused to apply the rule set forth in Macon.
¶ 43 Finally, the Daltons contend the trial court applied an incorrect standard. Specifically, they believe the court improperly relied upon its view that any bias by the juror did not affect the verdict. They cite the trial court's letter ruling, which stated:
The issue before this Court is whether:
1. Starla Rae Beckley's declaration of March 15, 2000, . . . has sufficient indicia of trustworthiness to be used to reverse a jury verdict on the basis of juror bias?
CP at 4935. In the Daltons' view, the court shifted the burden of proof from the doctors to the plaintiffs by requiring that the Daltons show Ms. Beckley's declaration was sufficiently trustworthy to justify upsetting the jury's verdict.
¶ 44 The trial court's formulation of the issue in the hearing was inartful. The issue was not whether the declaration had sufficient indicia of trustworthiness to be used to reverse a jury verdict on the basis of juror bias. The issue was whether the declaration had been altered after it was signed by Ms. Beckley. But nothing in the record of the hearing suggests that the trial court believed the Daltons had the burden, in opposing the defendants' CR 60(b)(4) motion, to prove the declaration they filed was trustworthy. There was no error. We, therefore, affirm the trial court's order granting the doctors' motion for CR 60(b) relief and striking Ms. Beckley's declaration from the record.
¶ 45 Given our holding, we vacate our earlier opinion in Dalton v. State, 115 Wash.App. 703, 63 P.3d 847 (2003), as it was decided solely on the declaration of Ms. Beckley, which is now stricken from the record. The clerk of court is directed to set the original appeal on the next available docket for rehearing by this court. The panel will not include Judge John A. Schultheis, who mediated the parties' unsuccessful settlement attempt which took place while the second appeal was pending here.
I Concur: BROWN, J.
I Concur in the Result Only: SWEENEY, A.C.J.
NOTES
[1] For ease of reference, the court uses "doctors" in this opinion to include the doctors and Spectrum.
[2] Presumably, Ms. Beckley confused Mr. Perey with Steve Anderson, who had participated via speaker phone in the interview of Ms. Beckley.
[3] The court in Sun Mountain Prod., Inc. v. Pierre, 84 Wash.App. 608, 617-18, 929 P.2d 494 (1997) quoted Marshall v. AC & S, Inc., 56 Wash.App. 181, 185, 782 P.2d 1107 (1989), for the proposition that "`[w]hen a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact [for purposes of summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" Marshall is distinguishable. In a summary judgment motion, the court does not weigh the evidence. Rather, it decides whether the evidence gives rise to any issue of material fact. And, a party should not be able to create an issue of fact by offering self-serving affidavits that contradict sworn testimony. Marshall has no application to the situation here, in which the issue is credibility and the sole purpose of the hearing is to judge the credibility of the witness's allegedly contradictory assertions.
[4] The doctors argue that the fact the court filed two sets of findings and conclusions was not error because the two sets are consistent. Whether they are consistent or not is immaterial. If one or more inconsistent findings support a decision, it will be upheld. Dep't of Revenue v. Sec. Pac. Bank, 109 Wash.App. 795, 807, 38 P.3d 354 (2002).