# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of:<br><br>STEVEN D. WAZNY,<br><br>                Respondent,<br><br>   and<br><br>SHANTEL P. WAZNY,<br><br>                Appellant. | No. 49393-4-II<br><br><br>UNPUBLISHED OPINION |

MAXA, A.C.J. – Shantel Wazny appeals the trial court's denial of her postjudgment motions regarding the dissolution decree that terminated her marriage to Steven Wazny. The decree incorporated a CR 2A settlement agreement that allocated community property and debts between the parties.

Steven[1] was the director of operations of and had an ownership interest in two companies that owned and operated fast food restaurants: AJP Enterprises LLC and NHG Enterprises LLC. The CR 2A agreement and dissolution decree allocated the interest in AJP to Steven and did not reference NHG, which an expert had stated had no value.

Shantel filed two motions regarding the dissolution decree and the CR2A agreement: a CR 60(b) motion to vacate the property and debt distribution portions of the dissolution decree

---

[1] To avoid confusion, first names are used to identify Shantel and Steven. No disrespect is intended.

and a motion to divide equally between the parties certain property that was undisclosed and undivided in the CR 2A agreement. The motions included various claims, but Shantel's primary allegation was that $300,000 in loans Steven received from the primary owner of AJP in fact were profits from AJP that Steven had concealed from her. The trial court denied both motions. A court commissioner also denied Shantel's motion to clarify that she was not responsible for the second mortgage on the community home that was awarded to her and denied her request for reasonable attorney fees.

We affirm the trial court and the court commissioner in all respects with two exceptions. First, we hold that the trial court erred by applying a clear, cogent, and convincing evidence standard rather than a preponderance of the evidence standard for Shantel's undisclosed property motion. We reverse the trial court's denial of Shantel's undisclosed property motion on one issue: her allegation that Steven concealed $300,000 of AJP profits and that those profits constituted undisclosed property under the CR 2A agreement. Second, and consistent with this ruling, we also vacate the trial court's award of reasonable attorney fees to Steven as the prevailing party under the CR 2A.

We remand for the trial court to consider, using the preponderance of the evidence burden of proof, Shantel's claim that Steven concealed $300,000 of AJP profits and that the $300,000 was undisclosed property under the CR 2A agreement.

FACTS

Steven and Shantel were married in 1997 and separated on October 23, 2011. Steven subsequently filed a dissolution petition.

At mediation on September 4, 2013, Steven and Shantel reached a settlement and signed a CR 2A agreement that memorialized the settlement terms. On November 21, the trial court entered a decree of dissolution and findings of fact and conclusions of law. Both pleadings incorporated the CR 2A agreement.

*Business Assets*

Steven paid $75,000 for the 10 percent equity interest in AJP, which was formed in September 2010. AJP's primary owner was Ajay Chopra. Steven was the director of operations/operating partner and was entitled to receive guaranteed payments as well as five percent of the company's net cash flow. AJP owned a number of fast food restaurants.

Steven also owned a 10 percent interest in the equity and profits of NHG. Chopra also was the primary owner of this company. As of December 31, 2012, NHG owned a single fast food restaurant that had opened on December 17, 2012. The record is unclear when NHG was formed, but the evidence suggests a formation date of around October 2012.

Before entering into the settlement, Steven and Shantel jointly retained a CPA to perform business valuations of AJP and NHG. The CPA prepared reports on these valuations in July 2013. He estimated that Steven's interest in AJP was worth between $150,000 and $300,000 on December 31, 2012. He estimated that Steven's interest in NHG had little or no current value on December 31, 2012 because its recently opened restaurant was operating at a loss and the company had approximately $400,000 of debt.

The parties did not ask the CPA to update his valuations before the mediation.

*CR 2A Agreement and Dissolution*

The CR 2A agreement incorporated a worksheet showing the property and debt allocation between Steven and Shantel. The property division showed that Shantel would receive the family home. A handwritten interlineation added that "wife takes 1st and 2nd" mortgage. Steven, Steven's attorney, and Shantel's attorney all initialed the interlineation, but Shantel did not. The 10 percent interest in AJP was valued at $44,500 after loan repayment and was allocated to Steven. NHG was not listed on the property worksheet.

The debt division showed that "B of A Equity Line of Credit for Buy-in to AJP" in the amount of $42,319 was allocated to Steven. Clerk's Papers (CP) at 7. Steven also was assigned debts in the amount of $25,000 for a loan from AJP, the balances on three credit cards, $18,000 for a loan on a boat, and $19,000 for a loan on a car.

The CR 2A agreement included an undisclosed property provision that stated, "Any undisclosed property shall remain 50% each to the parties as tenants in common and may be brought back to Court. Prevailing party entitled to attorney fees and costs on court ruling." CP at 3.

The trial court's findings of fact entered with the dissolution decree incorporated the CR 2A agreement by reference. The findings also provided a list of the parties' real and personal community property, which did not include NHG.

The dissolution decree sections for property and liabilities allocated to the two parties all stated, "See CR 2A Agreement on file and incorporated herein by this reference." CP at 707. However, the section on liabilities to be paid by Shantel also stated, "Wife shall be responsible for payment of . . . the 1st and 2nd mortgages on the family home awarded to her." CP at 707.

4

*Motion to Vacate and Post Decree Motions*

On February 17, 2016 Shantel filed two related motions regarding the dissolution decree that had been entered over two years earlier. First, she filed a motion to vacate the portions of the CR 2A agreement and dissolution decree relating to the valuation of AJP and the distribution of debt. This motion to vacate was brought under CR 60(b) based on Steven's alleged fraud in (1) concealing more than $300,000 in profits from AJP, resulting in a low valuation of the interest in AJP allocated to him; and (2) claiming as community debts allocated to him certain sham debts and the second mortgage that he later claimed Shantel was responsible for, resulting in a disproportionate debt distribution.

Second, Shantel filed "post decree motions" on various issues. She alleged that the following property was "undisclosed" in the CR 2A agreement: (1) $300,000 in concealed profits from AJP, (2) a $31,733.33 distribution from NHG, and (3) the value of Steven's interest in NHG.[2] Shantel claimed that she was entitled to 50 percent of this property under the undisclosed property provision of the CR 2A agreement. Shantel also requested that the trial court rule that she was not responsible for the second mortgage on the family home that had been awarded to her.[3] She noted in a declaration that the second mortgage was the same debt that had been allocated to Steven as an equity line of credit in the CR 2A agreement.

---

[2] Shantel also argued that Steven misrepresented that NHG had no value and should have updated Deaton's valuation before the mediation.

[3] Shantel's motion also raised other issues regarding enforcement of the dissolution decree that are not at issue on appeal.

The trial court heard argument on the motions and made an oral ruling on April 22. The court ruled that Shantel had failed to show by clear, cogent, and convincing evidence that Steven committed fraud or misrepresentation to warrant redistributing AJP's profits or reallocating the community debt. The trial court sent for consideration by a trial court commissioner the issue of whether Shantel was responsible for the second mortgage on the community home under the terms of the CR 2A agreement and other issues regarding enforcement of the dissolution decree provisions not at issue in this appeal. The trial court deferred consideration of attorney fees until after the commissioner ruled on the other issues.

On June 28, the commissioner heard arguments and ruled that "[t]he CR2A is clarified to state that the wife is responsible for the Bank of America Equity Loan line of credit on the family residence." CP at 1017. The commissioner ruled in favor of Shantel on her other claims, including Steven's obligation to execute a quit claim deed for the community home, to pay for the replacement of a deck on the home, and pay certain pre-dissolution household expenses. However, the commissioner declined to award Shantel attorney fees.

*Motion for Reconsideration*

On May 19, Shantel filed a motion for reconsideration, arguing that the trial court's ruling had addressed only her motion to vacate and not her undisclosed property motion. She emphasized that the court's application of the clear, cogent, and convincing standard applied only to the motion to vacate and not to her motion on undisclosed property under the CR 2A agreement, for which a preponderance of the evidence standard applied. On July 1, the trial court heard argument on Shantel's motion for reconsideration. In an oral ruling, the trial court denied reconsideration and declined to clarify its ruling. The court emphasized that the clear,

cogent, and convincing standard was proper for all of Shantel's motions. The court entered findings of fact and conclusions of law regarding Shantel's motion to vacate and undisclosed property motion and the motion for reconsideration.

The trial court subsequently awarded Steven reasonable attorney fees based on the attorney fee clause in the "undisclosed property" provision of the CR 2A agreement.

Shantel appeals the trial court's denial of her motion to vacate, undisclosed property motion, and motion for reconsideration, and the award of attorney fees to Steven.

ANALYSIS

A.    MOTION TO VACATE

Shantel argues that the trial court erred by denying her CR 60(b) motion to vacate the AJP valuation and division and the distribution of debt. We disagree.

1.    Legal Principles

CR 60(b)(4) authorizes a trial court to vacate a judgment for "[f]raud . . . , misrepresentation, or other misconduct of an adverse party." The rule is aimed at judgments that were unfairly obtained. *Dalton v. State*, 130 Wn. App. 653, 668, 124 P.3d 305 (2005). A party seeking relief under CR 60(b)(4) must show fraud, misrepresentation, or misconduct by clear, cogent, and convincing evidence. *Id.* at 665.

The decision to grant or deny a motion to vacate a judgment under CR 60(b) is within the trial court's discretion. *Jones v. City of Seattle*, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). Therefore, we review CR 60(b) orders for abuse of discretion. *Tamosaitis v. Bechtel Nat'l, Inc.*, 182 Wn. App. 241, 254, 327 P.3d 1309 (2014). A trial court abuses its discretion if its decision is based on untenable grounds or reasons. *Id.*

2. Analysis

a. $300,000 of Concealed AJP Profits

Shantel argues that Steven fraudulently concealed $300,000 of AJP profit distributions, and that the CPA would have given a significantly higher valuation of Steven's interest in AJP if he had known that AJP had those additional profits. She asserts that AJP must be revalued and that community property must be reallocated to reflect the higher value going to Steven.

Shantel argued in the trial court that Steven concealed the $300,000 in AJP profits by having Chopra hold the money in his account and transfer it to Steven after the dissolution. She claimed that the $300,000 represented a profit distribution and not a loan. Her position was based on an analysis of amounts Chopra received from AJP and of AJP's profits compared with distributions to Steven during 2012 and 2013.

However, Chopra stated in a declaration that the $300,000 he gave Steven was a loan, not Steven's income from AJP. Further, the trial court found that the evidence Shantel presented did not explain why Steven was entitled to more money from AJP than he received. Therefore, the trial court concluded that there was not clear, cogent, and convincing evidence that Steven had concealed $300,000 of AJP profits. Substantial evidence supports that finding.

Shantel also argues that Steven's "transfer" of $300,000 to Chopra before that amount was returned to him as a loan was fraudulent under the Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW, and as a result she met her burden to prove clear, cogent, and convincing evidence of fraud.[4] Under the UFTA, a creditor can avoid a property transfer

---

[4] Shantel argued for the first time on reconsideration in the trial court that the court should have applied a presumptive fraud standard based on the UFTA instead of requiring clear, cogent, and convincing evidence of fraud.

deemed to be fraudulent to the extent necessary to satisfy the creditor's claim. RCW

19.40.071(a)(1). The creditor also may have a cause of action against a person accepting a

fraudulent transfer. RCW 19.40.081(b)(1); *see generally Thompson v. Hanson*, 168 Wn.2d 738,

744-45, 239 P.3d 537 (2009). The UFTA provides that certain types of property transfers are

deemed fraudulent. RCW 19.40.041(a)(1); RCW 19.40.041(a)(2)(ii); RCW 19.40.051(a).

However, Shantel did not assert a claim under the UFTA to avoid the transfer or to

recover from Chopra; she moved to vacate a judgment under CR 60(b). Shantel does not present

any authority that supports the application of the UFTA standards in the context of a CR 60(b)(4)

motion to vacate for fraud. In the absence of such authority, we decline to apply UFTA

standards and presumptions in addressing the trial court's CR 60(b)(4) ruling.

Properly applying the clear, cogent, and convincing standard, the trial court concluded

that Shantel did not establish that Steven fraudulently concealed $300,000 of AJP income.

Accordingly, we hold that the trial court did not abuse its discretion in denying Shantel's CR

60(b) motion to vacate the AJP valuation and distribution.

### b. Sham Debts

Shantel characterizes four of the community debts allocated to Steven in the dissolution

decree as sham debts: (1) a $25,000 loan from AJP that Steven did not repay, (2) the balances on

three credit cards that AJP must have paid, (3) a loan on a boat that either did not exist or Steven

was not making payments on, and (4) a car loan that AJP must have paid.[5]

---

[5] Shantel also places in this category the second mortgage/equity line of credit allocated to
Steven in the CR 2A worksheet that he later claimed was Shantel's debt. But she does not argue
on appeal that the second mortgage allocation entitles her to relief under CR 60(b)(4). Instead,
she argues (as discussed below) that she should not be responsible for the second mortgage.

The trial court noted that the only evidence Shantel presented to show that Steven was not liable for the debts was her inability to find payments on the debts in Steven's bank statements. In addition, the court found that Shantel had not presented evidence that someone other than Steven was responsible for payment of the debts. The court also relied on *In re Marriage of Maddix*, 41 Wn. App. 248, 703 P.2d 1062 (1985), to conclude that Shantel had an obligation to resolve her disagreement about the amount of the debts before entering into the CR 2A agreement.[6] Therefore, the court concluded that Shantel had not shown by clear, cogent, and convincing evidence that Steven committed fraud or misrepresentation regarding the community debts allocated to him. Substantial evidence supports that finding.

Shantel also argues that Steven had the burden of proving good faith regarding the community debt allocate to him. She points out that he failed to produce proof of the credit card payments, the boat loan, or the car loan. But in a CR 60(b) motion, the moving party has the burden of proof. *Dalton*, 130 Wn. App. at 665. The trial court found that Shantel did not meet her burden.

Accordingly, we hold that the trial court did not abuse its discretion in denying Shantel's CR 60(b) motion to vacate the distribution of community debt.

B.      MOTION ON UNDISCLOSED PROPERTY

As noted above, the CR 2A agreement provided that each party would own 50 percent of "[a]ny undisclosed property." CP at 3. Shantel identifies certain property as "undisclosed": (1)

---

[6] In *Maddix*, the court stated that when a party has sufficient notice to protect his or her interests, it is incumbent upon a party to examine the value of a business before proceeding with the dissolution. 41 Wn. App. at 253. The court stated that a party "should not be allowed to return to court to do what should have been done prior to entry of the final decree." *Id.*

the $300,000 in allegedly concealed profits from AJP, (2) a $31,733.33 distribution from NHG that Steven received shortly after the dissolution, and (3) the value of Steven's interest in NHG. She argues that the trial court improperly applied a clear, cogent, and convincing evidence standard rather than a preponderance of the evidence standard for the undisclosed property motion.

We agree that the trial court erred in applying a clear, cogent, and convincing evidence standard when addressing Shantel's undisclosed property claims. However, we reverse only the denial of Shantel's motion regarding the $300,000 in allegedly concealed AJP profits. The other two claims have no merit regardless of the evidence standard applied.

1. Alleged $300,000 in AJP Profits

Shantel argues that the trial court erred by applying the CR 60(b)(4) clear, cogent, and convincing burden of proof to the claims brought in her undisclosed property motion. She asserts that her burden should have been to show undisclosed property by a preponderance of the evidence. We review the applicable burden of proof de novo. *In re Marriage of Wehr*, 165 Wn. App. 610, 613, 267 P.3d 1045 (2011).

Shantel does not dispute that the trial court properly applied the clear, cogent, and convincing standard of proof to her CR 60(b) motion. But her undisclosed property claims were not based on CR 60(b)(4); they were based on the "undisclosed property" provision in the CR 2A agreement. Shantel's claims presented a factual issue based on the contract language – whether certain property was undisclosed and therefore subject to the CR 2A provision requiring joint ownership of that property.

11

"[T]he preponderance of the evidence standard generally applies in civil cases." *Dep't of Labor & Indus. v. Rowley*, 185 Wn.2d 186, 208, 378 P.3d 139 (2016); *see also Nguyen v. Dept. of Health*, 144 Wn.2d 516, 524, 29 P.3d 689 (2001) (stating that the preponderance standard generally applies in civil cases involving monetary disputes between private parties). Steven does not cite any authority supporting the application of a clear, cogent, and convincing evidence standard to these contract-based claims, and in fact he does not even address this issue.

In its April 22, 2016 oral ruling on all of Shantel's postjudgment motions, the trial court focused primarily on the CR 60(b)(4) motion. The court engaged in a lengthy analysis of Shantel's argument that the $300,000 in purported loans were concealed profits, and concluded that the evidence did not support a finding that Steven was hiding community profits or committed fraud or misrepresentation. The court expressly applied the clear, cogent, and convincing evidence standard in making these conclusions. The trial court addressed Shantel's undisclosed property claim in one sentence and did not expressly state whether it was applying the clear, cogent, and convincing standard or the preponderance standard in making this ruling.

On reconsideration, Shantel argued that the trial court's application of the clear, cogent, and convincing standard applied only to the motion to vacate and not to her motion on undisclosed property under the CR 2A agreement, for which a preponderance of the evidence standard applied.

In response, the trial court made it very clear that it was applying a clear, cogent, and convincing standard to all of Shantel's motions. The trial court stated,

> I'm going to deny your motion for reconsideration. I don't think I need to clarify my ruling, I think it was unambiguous. I ruled that the standard was clear, cogent, and convincing evidence. I didn't find there was that standard. I also did not have to find that there was a standard by the preponderance of the evidence because that

> is not the appropriate standard I had to abide. I found Ms. Wazny's evidence to be insufficient in every respect, and I found that the standard was appropriate of clear, cogent, and convincing evidence.

CP at 1067.

The trial court should have applied a preponderance of the evidence standard to Shantel's claim that the $300,000 Steven received was undisclosed property under the CR 2A agreement. But the trial court made it clear that it applied the clear, cogent, and convincing evidence standard to that claim. Therefore, we hold that the trial court erred in applying the wrong burden of proof. And because we cannot determine if the trial court would have made the same ruling if it had applied the proper standard, we must remand for the trial court to consider this claim based on a preponderance of the evidence standard.

2.    NHG Distribution

Steven apparently received his 2013 profit distribution from NHG in the amount of $31,733.33 in December 2013, shortly after the dissolution was finalized. Shantel argues that she is entitled to half of the NHG distribution because it was undisclosed

Steven does not directly address this argument, but apparently does not dispute that this distribution was undisclosed at the time of the settlement. However, the CR 2A agreement expressly provides that each party "will keep his/her post separation acquisitions." CP at 2. The parties separated on October 23, 2011. There is no question that Steven's entitlement to profits from NHG earned in 2013 constituted a post-separation acquisition of property. Accordingly, we hold that the trial court did not err in denying Shantel's motion to divide Steven's $31,733.33 profit distribution from NHG for 2013.

3.    Value of Steven's Interest in NHG

Shantel argues that she is entitled to 50 percent of Steven's interest in NHG under the CR 2A agreement. However, the trial court made a specific finding of fact that NHG was fully disclosed before the parties signed the CR 2A agreement and the dissolution decree. Shantel does not appear to dispute this fact, and she cannot deny that the parties jointly retained an expert to value NHG long before the settlement.

Instead, Shantel focuses on the fact that NHG was *undivided* in the CR 2A agreement. She claims that "[t]he parties contracted in their CR2A [sic] agreement to split undivided property 50-50." Br. of Appellant at 24-25. But Shantel's claim is incorrect. The CR 2A agreement clearly states that the parties will jointly own undisclosed property, not undivided property. Any claim to undivided property must be addressed under the common law (discussed below), not under terms of the CR 2A agreement.

There is no dispute that Steven's interest in NHG was disclosed at the time of the parties' settlement. Accordingly, we hold that the trial court did not err in denying Shantel's motion to divide that interest under the undisclosed property provision of the CR 2A agreement.

C.    ENTITLEMENT TO INTEREST IN NHG AS UNDIVIDED PROPERTY

As discussed above, Shantel appears to argue on appeal that she is entitled to divide Steven's interest in NHG under the common law because it was community property and was not divided in the CR 2A agreement or the dissolution decree.[7] We disagree that Shantel has shown that Steven's interest in NHG was community property.

---

[7] Shantel did not rely on the common law in her original motion, referencing only her entitlement to divide NHG under the CR 2A agreement. But she did briefly make this argument before the commissioner, and on reconsideration.

Shantel is correct that community property not disposed of in a dissolution is owned thereafter by the former spouses as tenants in common. *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 203, 580 P.2d 617 (1978). And property acquired during a marriage is presumed to be community property. *In re Marriage of Schwarz*, 192 Wn. App. 180, 189, 368 P.3d 173 (2016). However, property acquired after spouses separate is the separate property of each, not community property. RCW 26.16.140; *Schwarz*, 192 Wn. App. at 188-89. This rule is reflected in the CR 2A agreement, which provides that each party "will keep his/her post separation acquisitions." CP at 2. The issue here is whether Steven acquired his interest in NHG before or after the parties separated.

Shantel states without citation to the record that NHG was formed during the *marriage*. But she does not state whether or not NHG was formed *before the separation*. Steven relies on the clause in the CR 2A agreement stating that each party would keep property acquired after separation, and implies that his interest in NHG was acquired after the separation. But he does not cite to the record to show when he acquired his interest in NHG. The trial court did not address or make any finding of fact on this issue, probably because Shantel did not make this argument in her original motion.

The record shows that NHG opened an operating account on October 1, 2012, almost a year after the date of the separation. The CPA's report on NHG states that NHG's first restaurant opened on December 17, 2012. And the financial records indicate that the restaurant was likely purchased in November 2012 because there was a large initial deposit of $275,540 that month from an account owned by Chopra followed three days later by a withdrawal for $197,545, which is consistent with purchasing a restaurant. The December statement shows 18

15

deposits over the course of the month totaling $185,714, which is consistent with opening the restaurant.

This evidence is consistent with NHG being formed around October 2012 for the purpose of purchasing a fast food restaurant. This timing of NHG's formation also is consistent with the CR 2A agreement and the dissolution findings of fact, neither of which list NHG as community property. Shantel identifies no evidence or even a reasonable inference showing that NHG was formed before the parties separated in October 2011.

Shantel seems to argue that the fact that Deaton made a valuation of NHG indicates that it was community property. But the fact that Deaton prepared a valuation calculation for NHG does not establish that NHG was formed before the separation.

The only reasonable inference from the evidence presented is that NHG was formed around October 2012, a year after the parties separated. As a result, we cannot apply the presumption that Steven's interest in NHG was community property that the parties jointly owned. Accordingly, we hold that the trial court did not err in denying Shantel's motion to divide Steven's interest in NHG.

D.    RESPONSIBILITY FOR SECOND MORTGAGE

Shantel argues that the trial court commissioner erred in finding that she agreed to pay the second mortgage because she did not initial the handwritten interlineation on the CR 2A agreement. We disagree.

Shantel argues that the division sheet included with the CR 2A agreement is not enforceable with respect to the handwritten interlineation indicating that she takes the second mortgage. She argues that the CR 2A agreement and division sheets do not clearly show that she

16

in fact agreed to take responsibility for paying the second mortgage because (1) she did not initial the handwritten interlineation, (2) the numbers on the division sheet showing the home value less the first mortgage were not corrected to reflect her assumption of the second mortgage, and (3) the debt division sheet still listed the equity line of credit as Steven's responsibility.

However, Shantel ignores the fact that the CR 2A agreement was incorporated into the dissolution decree. Generally, when the dissolution decree incorporates by reference a separation agreement, the agreement merges into the decree. *In re Marriage of Yearout*, 41 Wn. App. 897, 900, 707 P.2d 1367 (1985). In addition, "[w]here a property settlement agreement is approved by a divorce decree, the rights of the parties rest upon the decree rather than the property settlement." *Mickens v. Mickens*, 62 Wn.2d 876, 881, 385 P.2d 14 (1963).

Here, the dissolution decree expressly addressed the second mortgage. Regarding Shantel's liabilities, the decree referred to the CR 2A agreement, but then further stated, "Wife shall be responsible for payment of . . . 1st and 2nd mortgages on the family home awarded to her." CP at 707. This provision clarified any ambiguity in the CR 2A agreement and unequivocally allocated the second mortgage to Shantel.

Accordingly, we hold that the commissioner did not err in ruling that Shantel was responsible for the second mortgage.

E.      SHANTEL'S REQUEST FOR ATTORNEY FEES

Shantel argues that the trial court commissioner erred in denying her request for attorney fees under RCW 26.09.140. We disagree.

Under RCW 26.09.140, a trial court in a dissolution action "after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to

17

the other party of maintaining or defending any proceeding under this chapter." A trial court has discretion whether to award attorney fees to a party under RCW 26.09.140. *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014).

We have reviewed the record, and we hold that the commissioner did not abuse its discretion in declining to award Shantel attorney fees under RCW 26.09.140.

F. TRIAL COURT'S AWARD OF ATTORNEY FEES TO STEVEN

The CR 2A agreement's "undisclosed property" provision stated: "Any undisclosed property shall remain 50% each to the parties as tenants in common and may be brought back to Court. Prevailing party entitled to attorney fees and costs on court ruling." CP at 3. The trial court awarded attorney fees to Steven based on the CR 2A agreement provision. And the court awarded Steven the full amount of the attorney fees he incurred, less certain deductions, without segregating the fees among Shantel's various claims.

Shantel challenges the amount of attorney fees the trial court awarded to Steven on various grounds. But we need not address these claims because we are reversing on Shantel's primary claim under the CR 2A agreement. Therefore, at this point Steven no longer is the prevailing party. Accordingly, we vacate the award of attorney fees to Steven, subject to further consideration on remand.

G. ATTORNEY FEES ON APPEAL

Shantel argues that we should award her attorney fees either under the CR 2A agreement or under RCW 26.09.140. Although we are remanding the primary undisclosed property issue that would be subject to the CR 2A agreement's attorney fee clause, the prevailing party on that issue is not yet known. And Shantel is not the prevailing party on any of the other issues on

18

appeal. Therefore, she is not entitled to recover attorney fees on appeal under the CR 2A agreement. And we decline to award Shantel attorney fees under RCW 26.09.140.

Steven argues that we should award him attorney fees under the CR 2A agreement or under RAP 18.9(a) for defending against frivolous arguments. Because we are remanding Shantel's primary undisclosed property claim, the prevailing party on that issue is not yet known. Steven is the prevailing party on all other issues, but most of them do not involve the CR 2A agreement and we decline to award attorney fees on those issues. And we decline to award attorney fees under RAP 18.9(a) because Shantel's arguments were not frivolous.

## CONCLUSION

We affirm the trial court and the court commissioner in all respects except that (1) we reverse the trial court's denial of Shantel's undisclosed property motion regarding her allegation that Steven concealed $300,000 of AJP profits and that those profits constituted undisclosed property under the CR 2A agreement, and (2) we vacate the trial court's award of reasonable attorney fees to Steven as the prevailing party under the CR 2A agreement. We remand for the trial court to consider, using the preponderance of the evidence burden of proof, Shantel's claim that Steven concealed $300,000 of AJP profits and that the $300,000 was undisclosed property under the CR 2A agreement.

No. 49393-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

JOHANSON, J.

LEE, J.