[No. 37035-9-I.   Division One.   January 13, 1997.]

SUN MOUNTAIN PRODUCTIONS, INC., ET AL., *Appellants*, v. JAMES P. PIERRE, ET AL., *Respondents*.

---

*Wesley N. Edmunds* and *Edmunds & Associates*, for appellants.

*Paul F. Cane, Russell C. Love,* and *Thorsrud, Cane & Paulich, Inc., P.S.,* for respondents.

COLEMAN, J. — William (B.J.) Pierre, Shane Pierre, and Carl Siemering burglarized Sun Mountain Productions, Inc. Sun sued Shane and B.J.'s parents, James and Barbara Pierre, for negligent supervision of Shane, who was 16 at the time of the burglary. The Pierres brought a motion for summary judgment and a motion to strike several of the declarations containing inadmissible evidence. The court granted both motions, finding that the parents had no actual knowledge of Shane's criminal behavior and that the declarations contained inadmissible evidence. Sun appeals both motions, arguing that the court erred in applying a subjective standard of parental knowledge and in striking the entire declarations rather than merely the inadmissible portions. We find that the court erred in striking portions of the affidavits and hold that Washing-

ton case law and public policy support the adoption of an objective standard of parental liability. We therefore reverse because when the objective standard is applied, the admissible portions of the affidavits create material issues of fact sufficient to withstand summary judgment.

## FACTS

B.J. and Shane admitted to their participation in the March 9, 1991, burglary of Sun. Because B.J. was 19 at the time of the burglary, Sun premises liability solely upon Shane's activities.

The Pierres submitted declarations of Shane, Barbara, and James in support of their motion for summary judgment. Shane declared that at the time of the burglary, he was a student a Woodinville High School and had never had problems in school. Shane also worked at the family-owned auto dealership, where he was responsible for depositing money. He declared that his parents never indicated that they did not trust him or that they had any knowledge of his criminal involvement before the burglary.

Barbara declared that Shane was a good student who excelled in sports and gave no indication of a drug or alcohol problem. Shane had a curfew of 11 p.m. on week nights and 1 a.m. on weekends at the time of the burglary. She did not see a change in her sons' activities or finances before or after the burglary.

James declared that Shane was a good student excelling in sports. Shane never gave James an indication of thievery, and James trusted him with the deposit money for the dealership. James declared that Shane had no altercation with the law before the Sun burglary and he did not know that Shane was involved in any thefts of any kind before the incident. He declared that the family always had car parts and stereos around the house because it was a significant part of the family auto business and both his sons had large personal stereo systems. Shane was also required to report where he was to his parents.

Sun offered declarations of Gordon Rechcygl, Dennis Metzger, Pat Haster, and Carl Siemering. The Pierres challenged the admissibility of these declarations, arguing that they contained inadmissible evidence. Sun admitted that these declarations contained some statements that were not admissible but argued certain portions were admissible.

For example, Sun argued that the following portions of Metzger's affidavit were admissible:

> 3. I have known defendants William James ("B.J.") and Michael Shane ("Shane") Pierre for approximately five years. I have visited the Pierre residence on several occasions.
>
> 4. In late 1990 and early 1991, Shane Pierre tried to sell me stolen car stereo speakers which he was storing in the Pierres' home. I knew that the equipment was stolen because Shane relayed this fact to me. The stereo speakers and other stereo equipment were sitting out in the open in Shane's bedroom, and at least one box of equipment was as large as a hope chest. . . . This occurred prior to the March 9, 1991 Sun Mountain theft. Approximately 20 pieces of stereo equipment were stored in and around a hutch in the corner of his bedroom visible from the doorway, clearly visible to someone looking in. The equipment included CD players, amplifiers, equalizers, tuners and decks.

Similarly, Sun argued that portions of Rechcygl's testimony were admissible:

> Late in 1989, while visiting the Pierre home, I observed boxes of car stereo and CD equipment, as well as stereo speakers. I observed these items in Shane Pierre's bedroom. I have seen as many as six or more systems in Shane Pierre's bedroom stored in plain sight on top of his dresser. Many of the systems stored in Shane Pierre's bedroom were not even in boxes. He had a hutch in his room and it was filled with CD players, tuners, amplifiers and the like, all in plain view.

Sun argued that based on these two witnesses, a reasonable inference could be drawn that the equipment was there for more than several days.

Sun further argued that portions of Siemering's declaration were also admissible. Siemering stated that he saw stolen stereo equipment at the Pierre residence and that some of the equipment—as many as 50 pieces—was in plain sight and clearly visible from the doorway. Siemering stated that he visited the home frequently before the March theft. He further stated:

> On more than one occasion while visiting the Pierre residence before the burglary, I observed Barbara Pierre stand at the threshold of B.J. and Shane Pierre's bedrooms and look in upon a virtual warehouse of obviously stolen merchandise. She did not confront her sons about the stolen merchandise or make any effort to make or help them curb their criminal behavior.

The court excluded the entire two sentences.

Siemering also declared that from his car in the driveway one time, he heard James say to his sons upon seeing stereo equipment in the attic, " 'What is all that shit in the attic? . . . If that shit is hot, get it out of here.' " Siemering also stated that he heard James state to his sons, " 'Get those f---ing seats out of my car!' " upon discovering Recaro seats, an expensive brand of car seats, in the back of his Ford Bronco. The court ruled that these statements had been retracted by Siemering in his deposition.

In his deposition, taken after his affidavit, Siemering testified that, from his car in the driveway, he remembered James telling B.J. to get those " '[f------] seats out of here,' " referring to the Recaro seats. But Siemering also testified that beside this incident, he never heard the Pierres say anything suggesting they thought Shane was involved in stealing before the burglary:

> Q. All right. And on no other occasion did he say anything that you interpreted to suggest that he knew anything about B.J. stealing anything prior to March 9, 1991, isn't that true?
>
> A. Nothing directly that I can remember.
>
> Q. Did you ever hear Mr. or Mrs. Pierre prior to March 9,

1991 say anything that suggested they thought Shane was involved in stealing anything prior to that date?

A. Huh-uh. No, I didn't.

Thus, Siemering did not relay the statement, "If that shit is hot, get it out of here," in his deposition.

Also in his deposition, Siemering stated that he met B.J. only three or four weeks before and Shane a week or two before the burglary. Siemering could not recall Shane ever bringing stolen property to Siemering before the burglary and testified that he first went to the Pierre home approximately two weeks before the burglary. He could not recall whether he met the Pierres before the burglary. When asked whether Barbara knew of B.J.'s involvement in thefts before Sun Mountain, he replied, "there's no way she could have known, because she's never there."

The court did not consider the affidavit because it determined that it conflicted with the subsequent deposition.

Sun also argued that portions of an interview of Shane taken by Detective Haster were admissible. In that interview, Shane stated that he had known Siemering since around December 1990 and that he had broken into cars with Siemering and stolen equipment on several occasions.

The court struck all the declarations, finding them rife with hearsay, speculation, and conclusory statements. It further determined that in the aggregate, Sun had not presented evidence withstanding either the subjective or objective standard of parental knowledge in the negligent supervision claim.

## ANALYSIS

■ The issue here is whether the plaintiffs established a prima facie case for negligent supervision. To establish this claim, the plaintiff must present evidence that "(1) the child has a dangerous proclivity; (2) the parents know

[or should have known] of the child's dangerous proclivity; and (3) they fail to exercise reasonable care in controlling that proclivity." *Barrett v. Pacheco*, 62 Wn. App. 717, 722, 815 P.2d 834 (1991). Sun argues that this court should adopt an objective standard to review parental knowledge. The Pierres claim that courts have implicitly rejected the objective standard and that it is contrary to public policy.

■ No known Washington case has squarely addressed whether actual or constructive parental knowledge of the child's dangerous proclivity is required in a negligent supervision claim. For example, in two cases, knowledge was proven. *See Eldredge v. Kamp Kachess Youth Servs., Inc.*, 90 Wn.2d 402, 404, 583 P.2d 626 (1978); *Norton v. Payne*, 154 Wash. 241, 245, 281 P. 991 (1929). The RESTATE-MENT OF TORTS favors the objective standard, providing that a parent is liable for the torts of his or her child when the parent "(a) knows or has reason to know that he [or she] has the ability to control [the] child, and (b) knows or should know of the necessity and opportunity for exercising such control." RESTATEMENT (SECOND) OF TORTS § 316 (1965). Although we have previously left open the possibility of adopting this RESTATEMENT, *see Barrett*, 62 Wn. App. at 722 n.5, two Washington cases have cited the RESTATEMENT favorably, *Eldredge*, 90 Wn.2d at 408 and *Carey v. Reeve*, 56 Wn. App. 18, 22-23, 781 P.2d 904 (1989), as have the majority of jurisdictions. *See, e.g., Merchant v. Mansir*, 572 A.2d 493 (Me. 1990); *Mitchell v. Wiltfong*, 4 Kan. App. 2d 231, 604 P.2d 79 (1979); *Parsons v. Smithey*, 109 Ariz. 49, 504 P.2d 1272, 54 A.L.R.3d 964 (1973); *Mancino v. Webb*, 274 A.2d 711 (Del. 1971); *Bieker v. Owens*, 234 Ark. 97, 350 S.W.2d 522 (1961).

We believe that the subjective standard would unduly burden plaintiffs, who would have to prove actual knowledge. And another party's actual mental state is difficult to prove, particularly when such events take place in that party's household. The Pierres claim that public policy favors the subjective standard because the objective standard would cause parents to "pry endlessly into the affairs

of their children, eroding the trust which forms the basis of a healthy parent-child relationship." But an objective standard in all likelihood would not affect the way parents and children interact. We adopt the objective standard.

We now turn to Sun's claim that the court erred in striking the affidavits in their entirety. The Pierres argue that Sun provided almost no admissible evidence, and thus, the affidavits were properly struck. While several excluded affidavit portions are contested, the only question is whether Sun provided admissible evidence to create a prima facie case of negligent supervision.

When reviewing an order of summary judgment, an appellate court must engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). After the moving party shows the absence of material facts, the inquiry shifts to the party with the burden of proof at trial, the plaintiff. *Young v. Key Pharm.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the plaintiff then fails to establish the existence of an element essential to the party's case, the moving party is entitled to summary judgment as a matter of law. *Young*, 112 Wn.2d at 225. Affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matter. CR 56(e). The trial court's determination in admitting evidence under CR 56(e) will not be set aside absent an abuse of discretion. *McKee v. American Home Prods.*, 113 Wn.2d 701, 706, 782 P.2d 1045 (1989).

Sun claims that the court erroneously struck paragraphs of Metzger's and Rechcygl's declarations because the large quantity of stereo equipment they saw in Shane's room supports the inference that Barbara saw the equipment and recognized or should have recognized that it was stolen. The Pierres argue that the declarations were properly excluded because they did not state whether the Pierres ever saw the items, how the Pierres would know the items were stolen, and how long the items were in the

room such that the Pierres would have or should have seen them.

While nothing in Metzger's or Rechcygl's affidavit portions conclusively proves that the Pierres saw this equipment, evidence is relevant if it tends to prove or disprove a fact and if the fact is one of consequence in light of other facts and the applicable law. *State v. Rice*, 48 Wn. App. 7, 12, 737 P.2d 726 (1987). Here, the declaration supports the inference that the Pierres knew or should have known of Shane's proclivity to steal. With several car stereo pieces in plain sight, a factfinder could conclude that such items were not constantly hidden or moved. While it may not have been unusual within the Pierre household for Shane to possess stereo equipment, the affidavit need not prove conclusively that the parents knew of Shane's proclivity to steal; it need only circumstantially establish an element of a claim to be relevant. *See Rice*, 48 Wn. App. at 12. We believe the facts do just that. We thus reverse the trial court's exclusion of those portions of the declarations.

Sun also argues that the court erred in excluding Pat Haster's declaration, in which Shane stated that he had known Siemering for five months and that he had broken into cars with Siemering to steal car stereos. Sun argues that the testimony is admissible because it establishes Shane's proclivity to steal, an element of negligent supervision. We agree. The court thus abused its discretion in excluding this relevant testimony.

We next consider whether Siemering's affidavit is inadmissible because it conflicted with his later deposition testimony. The Pierres claim that a party cannot create a material issue of fact with an affidavit that contradicts a deposition. In support of this, the Pierres cite *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989), where this court found evidence that contradicted a subsequent self-serving affidavit to be controlling: "When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine

issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Marshall*, 56 Wn. App. at 185; *accord Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984); *Radobenko v. Automated Equip. Co.*, 520 F.2d 540, 544 (9th Cir. 1975). Sun argues that *Marshall* is not applicable because Siemering's affidavit was taken before his deposition. But the Pierres cite *Darnell v. Target Stores*, 16 F.3d 174, 176-77 (7th Cir. 1994), where, as here, affidavits contradicted two witnesses' subsequent depositions. The court held that even when the depositions of the two witnesses' were taken after their affidavits, the plaintiffs could still not create material issues of fact by relying on those affidavits.

■ ■ We need not decide whether *Marshall*'s rule applies when the depositions were taken after the affidavit, as occurred here and in *Darnell*, because we find that the contradictions here were insufficient to strike the affidavit. While the parties discuss several minor contradictions, we believe that the main issue is whether Siemering contradicted his affidavit by failing to relay James's statement, "If that shit is hot, get it out of here." In his deposition, Siemering first stated that he could not remember the Pierre parents specifying anything besides the car seat incident indicating knowledge of Shane's activities. He then stated that he had never heard the Pierres suggest anything indicating they knew Shane was involved in stealing. An inability to recall a specific event, however, in response to a general question, does not necessarily amount to a contradiction. Without a specific contradiction or an explanation for why Siemering said it occurred in his affidavit and then said it did not occur, the trial court erred in striking that portion of the affidavit. Parties cannot negate material issues of fact with nonspecific deposition testimony. Thus, we consider this portion of the affidavit.

Sun also argues that the court erred in excluding

Siemering's statement that more than once before the burglary, he saw Barbara look into Shane's bedroom upon "a virtual warehouse of obviously stolen merchandise." The Pierres argue that this statement conflicts with Siemering's deposition testimony establishing that he did not meet Barbara before the burglary. But Siemering did not definitively testify that he did not meet Barbara before the burglary. Rather, he was unsure. The Pierres also argue that this affidavit statement conflicts with his deposition statement that Barbara could not have known of Shane's stealing because she was never there. Absent a specific and knowing contradiction, we leave any discrepancy to the trier of fact for purposes of summary judgment.

Finally, the Pierres argue that the statement is conclusory. In the context of Siemering's affidavit, however, where he detailed the large quantity of stereo equipment located in Shane's bedroom, the statement is not conclusory but is supported by an adequate foundation. We therefore reverse the court's exclusion of this portion of the affidavit. We need not address the rest of the alleged inadmissible evidence because it is not relevant to deciding this appeal.

## MATERIAL ISSUES OF FACT

Applying the objective standard, the question remains whether Sun presented sufficient evidence to withstand summary judgment based on the admissible portions of the declarations. We believe that it did. First, Sun presented evidence on Shane's proclivity to steal through Haster's declaration in which Shane admitted stealing. Second, Metzger's and Rechcgyl's declarations indicate that a large quantity of stereo equipment was kept in Shane's room and in other parts of the house, creating an issue of fact that the parents should have known that Shane had a proclivity to steal. Moreover, Siemering's declaration indicates that James may have had actual knowledge of Shane's proclivity and that

Barbara may have seen the large quantity of stereo equipment. Thus, Sun has raised an inference that the Pierres should have known of Shane's proclivity and that they failed to exercise reasonable care in controlling it. We therefore reverse the lower court because material issues of fact exist as to whether the Pierres knew or should have known of Shane's dangerous proclivity and whether they failed to take appropriate measures.

Reversed and remanded for trial.

AGID and ELLINGTON, JJ., concur.

Review denied at 132 Wn.2d 1003 (1997).