[No. 29207-0-III.    Division Three.    February 21, 2012.]

CHARLES E. SCHWARTZ ET AL., *Appellants*, v. STEVEN C.
ELERDING ET AL., *Respondents*.

*Brian J. Anderson* and *Ned Stratton* (of *Anderson Law PLLC*), for appellants.

*David A. Thorner* and *Megan Murphy* (of *Thorner Kennedy & Gano PS*), for respondents.

¶1 SIDDOWAY, J. — Charles and Shanna Lee Schwartz appeal the summary judgment dismissal of their claims for negligence, negligent supervision, and negligent entrustment, asserted against the parents of a 17-year-old who used a shotgun received from his parents to strike Mr. Schwartz during the course of an assault. At issue is whether, based on the evidence presented, any reasonable juror could find that the parents, Steven and Linda Elerding, acted unreasonably in failing to recognize a risk that their son would misuse the weapon. We find no error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Around midnight on April 20, 2007, Joey Elerding, then 17 years old and a junior in high school, was driving his father's truck in an unfamiliar area, trying to locate the home of a friend, when the truck became stuck in soft dirt as he attempted to turn around in the driveway of Charles and Shanna Lee Schwartz's rural home. Mr. Schwartz noticed the lights of the truck and could see that it was not leaving, so he drove his own truck out to investigate and/or help. Upon approaching Joey,[1] Mr. Schwartz could tell he had been drinking. Mr. Schwartz reached into the truck, pulled the keys out of the ignition, and told Joey he was going to call his parents to pick him up and drive him home. Although the two disagree on details of what happened next, they began to fight, with Joey attempting to get his keys back. In the course of the fight, Joey grabbed an unloaded 20-gauge shotgun from a toolbox in the bed of the truck and, holding it by its barrel, used it to strike Mr. Schwartz.

---

[1] We refer to the defendant Steven Elerding as "Mr. Elerding" and for clarity refer to his son by his first name. We use "Joey" rather than "Joseph" because references in the record are overwhelmingly to the familiar name.

¶3 Mr. Schwartz was badly injured by the time his wife walked out to look for him, saw what was happening, and called 911. Officers responded and arrested Joey. Both men were taken to the hospital. Mr. Schwartz suffered several facial fractures and incurred $40,000 in medical bills. He claims permanent damage to his left eye and ongoing memory loss, sleep disorders, and headaches. Joey eventually pleaded guilty to second degree assault and was sentenced to nine months' confinement.

¶4 After the Schwartzes learned that Joey's parents purchased the shotgun for him as a gift and allowed him to keep it in Mr. Elerding's truck, they commenced the action below, asserting claims against the Elerdings for negligent supervision of a child, negligent furnishing of a firearm, and general negligence, and for statutory liability under RCW 4.24.190, which imposes strict liability on parents in an amount up to $5,000 for certain willful and malicious actions of minor children living at home.[2] Early on, the Elerdings offered $5,000 in settlement in light of the claim for statutory liability with the caveat that the statutory claim required no proof of negligence, and they conceded none. They later moved the trial court to dismiss the Schwartzes' remaining claims under CR 12(c) for failure to allege that their son had a dangerous proclivity known to them and which they failed to control. They moved alternatively for summary judgment dismissing the negligence claims.

¶5 In support of their motion, the Elerdings submitted evidence that Joey took and passed a firearm safety course and had his parents' permission to keep firearms in Mr. Elerding's truck for hunting purposes but was required not

---

[2] RCW 4.24.190 reads in its entirety:

The parent or parents of any minor child under the age of eighteen years who is living with the parent or parents and who shall willfully or maliciously destroy or deface property, real or personal or mixed, or who shall willfully and maliciously inflict personal injury on another person, shall be liable to the owner of such property or to the person injured in a civil action at law for damages in an amount not to exceed five thousand dollars.

to have the shotgun and shells in the same place; that he had a valid hunting license; that he had never improperly used the shotgun in the past; that prior to his assault of Mr. Schwartz, his only encounter with law enforcement had been one speeding ticket received in West Richland when he was 16; that he was virtually a straight-A student with high test scores on college entrance exams; and that the only blemish on his school attendance record were days missed when he traveled to compete in a junior national swimming championship. They submitted the discipline records maintained by the school Joey attended, which reflected only the following instances of discipline:

> 10/1/2004: "Ms. Hedstrom gave Joey a detention for misbehavior in English 9; Joey threw paper wads. Detention One."

> 5/4/2006: "Joey admitted to drinking at a party. Joey will serve his athletic code violation during the [sic] of '06-'07 swimming season, if he swims. A second violation will result in a loss of all athletics for a calendar year and no class trips, including Close-up."

> 9/27/2006: "Joey squealed tires when leaving the parking lot after school – warning, next time will lose at least 2 weeks of off-campus privileges."

Clerk's Papers (CP) at 131-36.

¶6 In opposition to the motion, the Schwartzes identified the following allegations and facts that they contend both state a claim and present genuine issues of fact, parenthetically identifying the supporting evidence or documents:

9. Defendants' son, Joseph Elerding, had a dangerous proclivity. (Complaint ¶ 4.6).

10. Defendants' son had been disciplined at school for underage drinking at a party about one year prior to the incident. (Letter from [defense counsel] to [plaintiffs' counsel], Exhibit A).

11. Defendants' son had been drinking alcohol the night of the incident. (Sheriff's Report, Exhibit B).

12. Defendants furnished their son with a firearm. (Complaint ¶ 4.10, Answer to Interrogatory No. 34, Exhibit C; see also Exhibit B).

13. Defendants allowed their son to keep the firearm with him in his car allowing him unsupervised access and control of the firearm. (Complaint ¶ 4.11, Answer to Interrogatory No. 35, Exhibit C) [and]

14. Defendants['] son had a disciplinary school action in September 2006 that resulted in a revocation of all off-campus privileges for two weeks. (Exhibit A).

CP at 69-70. The document attached as exhibit A was a letter from defense counsel forwarding the school disciplinary records. The record did not indicate that Mr. or Mrs. Elerding had been notified or otherwise knew of any of the incidents resulting in discipline by the school. The Schwartzes offered no other evidence that either Mr. or Mrs. Elerding had known prior to April 20, 2007, of the facts identified as 10, 11 and 14.

¶7 At the conclusion of the hearing on the motion, the trial court granted the motion for summary judgment. Following entry of the order dismissing the three negligence claims, the Schwartzes accepted the Elerdings' offer to settle the claim for statutory liability for the earlier-offered $5,000. They timely appealed dismissal of their negligence claims.

## ANALYSIS

¶8 The Schwartzes argue that the rationale offered by the trial court in granting summary judgment—the lack of evidence that Joey's assault was foreseeable—addresses an issue that is not itself an element of negligence; that foreseeability, as an aspect of duty or proximate cause, is ordinarily an issue of fact; and that it should not have been analyzed identically for what they argue are three distinct theories of liability.

¶9 We review summary judgment orders de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93

P.3d 108 (2004). Summary judgment is proper if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. CR 56(c). A defendant may move for summary judgment on the ground that plaintiff lacks competent evidence to support its claim. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclosing that a genuine issue of material fact exists. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986). When considering a summary judgment motion, the court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Fed. Way Sch. Dist. No. 210 v. State*, 167 Wn.2d 514, 523, 219 P.3d 941 (2009).

¶10 We review the trial court's dismissal of the Schwartzes' claims for negligence, negligent supervision, and negligent entrustment in turn.

I

¶11 The elements of a negligence action are duty, breach, proximate cause, and damage or injury. *Berger v. Sonneland*, 144 Wn.2d 91, 103, 26 P.3d 257 (2001). "Duty is the duty to exercise ordinary care, or, alternatively phrased, the duty to exercise such care as a reasonable person would exercise under the same or similar circumstances. Breach is the failure to exercise ordinary care, or alternatively phrased, the failure to exercise such care as a reasonable person would exercise under the same or similar circumstances. Breach is also called 'negligence.'" *Mathis v. Ammons*, 84 Wn. App. 411, 416, 928 P.2d 431 (1996) (footnotes omitted), *review denied*, 132 Wn.2d 1008 (1997).

¶12 In asserting their claim for general negligence, the Schwartzes rely on both the general duty of care and a statutory duty, based on RCW 9.41.080, which makes it a

class C felony to deliver a firearm to any person whom the individual delivering the firearm has reasonable cause to believe is ineligible to possess a firearm. The Schwartzes contend that the statute applies to the Elerdings' delivery of the shotgun to Joey, a minor.

¶13 A statute may impose a duty that is additional to, and different from, the duty to exercise ordinary care, and has this effect when it meets a four-part test drawn from the *Restatement (Second) of Torts* § 286 (1965): The statute's purposes, exclusively or in part, must be (1) to protect a class of persons that includes the person whose interest is invaded, (2) to protect the particular interest invaded, (3) to protect that interest against the kind of harm that resulted, and (4) to protect that interest against the particular hazard from which the harm resulted. *Mathis*, 84 Wn. App. at 416.

¶14 RCW 9.41.080 does not make every delivery of a firearm to a minor—in this case, a 17-year-old—unlawful. It incorporates RCW 9.41.040, which in turn incorporates RCW 9.41.042, identifying when minors may lawfully possess firearms. RCW 9.41.040(2)(a)(iii). Given Joey's hunter safety certificate and valid hunting license, he could lawfully possess the shotgun, with or without his parents' supervision, when skeet shooting at an established range; when hunting and trapping; when in an area where the discharge of a firearm was permitted and he was not trespassing; and when traveling with the unloaded firearm to or from such locations. RCW 9.41.042(2), (4)-(6). He could also possess the shotgun, with permission, at real property under the control of his parents or a relative. RCW 9.41.042(7). Because undisputed evidence establishes that the Elerdings gave Joey the shotgun for hunting purposes and subject to restrictions, it is questionable whether the statute applies. The Schwartzes argue, however, that the evidence establishes that Joey was allowed to keep the shotgun in the toolbox of Mr. Elerding's truck, which he was allowed to borrow at other times, using it to travel to other

places, with his parents' knowledge and permission. Yet the statute they rely upon speaks only to delivery to a person ineligible to possess a firearm. By its terms, it does not require supervision following delivery and it may not extend to a minor who retrieves a firearm from the toolbox of an adult's truck, in the absence of the adult, for an unauthorized purpose.

¶15 We need not resolve the precise nature of the Elerdings' duty under the statute, however, because a breach of the duty it creates, assuming it applies, is not negligence per se, but only evidence of negligence. RCW 5.40.050. And it is not evidence that necessarily creates a jury question. If a statutory duty was violated, the trial judge "must determine whether, in light of all the facts and circumstances of the case, reasonable minds could differ on whether the defendant used ordinary care." *Mathis*, 84 Wn. App. at 418. Among other determinations, "[i]f no reasonable mind could find that the defendant failed to exercise ordinary care, the judge can find the absence of negligence as a matter of law." *Id.* at 419. In ruling on summary judgment below, the trial court assumed the statute applied but nonetheless found no evidence that the Elerdings foresaw any unreasonable risk of harm. Report of Proceedings at 39-40.

¶16 The evidence is undisputed that Joey had never been involved in any kind of altercation prior to the assault on Mr. Schwartz. His school record, even including his few disciplinary violations, was that of a conscientious student. His mother testified that he had not been in trouble before and had never before missed his curfew. To this, the Schwartzes respond that *McLeod v. Grant County School District No. 128*, 42 Wn.2d 316, 255 P.2d 360 (1953) establishes that a defendant need not have knowledge or notice of the criminal propensities of an individual in order to have reasonable warning of a general field of danger. The plaintiff in *McLeod* was a 12-year-old student who alleged she was forcibly raped by two 15-year-olds in a darkened room

below the bleachers of the school's gymnasium, after the school lapsed from its usual practice of supervising students given access to the gymnasium during the lunch hour. There were no allegations that the boys she accused had "known vicious propensities." *Id.* at 321.

¶17 In *McLeod*, however, the court recognized that two factors bore on the school's duty, the first being the relationship between the school district and the 12-year-old plaintiff—a relationship in which "the protective custody of teachers is mandatorily substituted for that of the parent." *Id.* at 319. The general nature of the risk was a second factor. *Id.* Given the special relationship between the school district and the plaintiff, *McLeod* recognized that a heightened duty was owed. And while it held that the school district need not have foreseen the prospect of a forcible rape, the pertinent inquiry was "whether the actual harm fell within a general field of danger which should have been anticipated." *Id.* at 321. It found that the school district should have foreseen the risk of some acts of indecency— acts such as molestation, indecent exposure, or seduction—by leaving teenaged students, of unascertained and presumably varying character, entirely unsupervised and with access to the unlocked room.

¶18 While *McLeod* predated the *Restatement (Second) of Torts*, later Washington decisions have applied the principles set forth in *Restatement* §§ 302 and 302B to determine a defendant's liability in negligence for the foreseeable act of a third person. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 230-31, 802 P.2d 1360 (1991) (examining whether and when a defendant's property may afford a special or peculiar temptation or opportunity for crime); *Tae Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 196, 15 P.3d 1283 (2001) (finding that the recognizable " 'high degree of risk of harm' " required for liability under § 302B was not present (emphasis omitted) (quoting RESTATEMENT § 302B cmt. e)). As observed in *Kim*, " 'The general rule at common law is that

a private person does not have a duty to protect others from the criminal acts of third parties.'" *Id.* at 195 (internal quotation marks omitted) (quoting *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 199, 943 P.2d 286 (1997)). *Kim* recognized § 302B as addressing the exceptions to the general rule. *Id.* at 196.

¶19 *Restatement* § 302 states the general principle that "[a] negligent act or omission may be one which involves an unreasonable risk of harm to another through . . . the foreseeable action of . . . a third person." For this type of negligence, what the defendant knows or should know about the common qualities and habits of other human beings in general, or whatever special knowledge he or she has of the qualities or habits of the third person at issue, is fundamental to the reasonableness of his or her conduct. *See* RESTATEMENT § 302 cmt. j. In this respect, the claim of general negligence is similar, even though not identical, to claims for negligent supervision and negligent entrustment. It is not surprising that what a defendant knows or should know about the third person whose conduct is at issue may provide an appropriate basis for summary judgment on liability with respect to all three related claims, if evidence bearing on the factors that distinguish the three torts is undisputed.

¶20 *Restatement* § 302B states the principles applicable to this case and provides that the Elerdings' providing the shotgun may be negligent

> if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of . . . a third person which is intended to cause harm, even though such conduct is criminal.

¶21 Comment d to § 302B observes that

> [n]ormally the actor has much less reason to anticipate intentional misconduct than he has to anticipate negligence. In the ordinary case he may reasonably proceed upon the assumption that others will not interfere in a manner intended to cause

harm to anyone. This is true particularly where the intentional conduct is a crime, since under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law.

¶22 In addressing a defendant's duty to anticipate intentional misconduct by a third party, the comments distinguish between the duty of defendants such as the Elerdings and the duty of a defendant owing a heightened duty such as the school district sued in *McLeod*. Speaking of defendants like the school district, comment e of § 302B explains:

> There are, however, situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account.

¶23 The Elerdings owed only the usual duty of ordinary care. Lacking evidence that the Elerdings had any special knowledge about Joey that would give them reasonable cause for concern, the Schwartzes focus instead on the fact that he was a minor, on what they characterize as "widespread knowledge that any and all minors have a dangerous proclivity when it comes to guns," and on the premise that "a minor misusing a gun is foreseeable by almost everyone." Br. of Appellant at 12 (boldface omitted). We know of no basis for the Schwartzes' generalizations about all minors, and the Schwartzes offer none, other than the restrictions on minors' possession of firearms provided by the joint operation of RCW 9.41.080, .040(2)(a)(iii), and .042 and similar restrictions adopted in other jurisdictions. But RCW 9.41.042(5) at the same time provides that unless trespassing, only minors under age 14 must be supervised by a

competent adult while in areas where discharge of a firearm is permitted. Washington statutes place no restriction on the age at which children may possess a firearm while in attendance at a hunter's safety course, engaging in practice at an established range, engaging in an organized competition, hunting or trapping under a valid license, or on a parent's or relative's property with permission to possess the firearm. RCW 9.41.042(1)-(4), (7); *and see, e.g.*, former RCW 77.08.010(30) (2005) (at age 16 and over, minor is licensed as adult rather than "youth" for hunting license purposes); former RCW 77.32.350(3) (2002) (migratory bird validation required of persons 16 and older); RCW 79A-.25.210 (school districts are eligible recipients of state grant monies usable to purchase and develop range properties usable for firearm training and practice and hunter safety education); *Heilman v. Wentworth*, 18 Wn. App. 751, 755, 571 P.2d 963 (1977) (17-year-olds hunting jackrabbits at nighttime were engaged in "an age-old tradition in Eastern Washington"), *review denied*, 90 Wn.2d 1004 (1978).

¶24 To avoid summary judgment dismissing their negligence claim, the Schwartzes were required to present evidence creating a genuine issue that the Elerdings failed to exercise ordinary care. They were unable to present such evidence and their claim was appropriately dismissed.

II

¶25 In order to establish a claim of negligent supervision against parents for the acts of a minor child, the plaintiff must establish that (1) the child has a dangerous proclivity, (2) the parents know of the child's dangerous proclivity, and (3) the parents fail to exercise reasonable care in controlling that proclivity. *Barrett v. Pacheco*, 62 Wn. App. 717, 722, 815 P.2d 834 (1991).

¶26 In *Barrett*, the court affirmed summary judgment in favor of the parents of a 14-year-old, A.P., who shot and

injured a police officer during the commission of a burglary. It agreed with the trial court that the parents were not liable as a matter of law, despite having given their son pellet guns and rifles over the years; despite knowing that in the six months preceding the shooting of the officer, A.P. had committed three burglaries and been convicted of attempted theft; and despite the discovery in his bedroom, following the shooting, of a pipe bomb, other incendiary devices, and literature on bombs and explosives. The Pachecos offered undisputed countervailing evidence that Mr. Pacheco had enrolled A.P. in a gun safety course, allowing his son to shoot the guns only in the country when accompanied by his father. Mr. and Mrs. Pacheco had attempted to impose strict supervision on A.P. following his burglaries. Perhaps most importantly, police investigation had revealed that neither of the parents had ever seen A.P. be violent toward another person. The court held that for parents to be liable for negligent supervision, a known dangerous proclivity of the child must be within the "same zone of behavior that would put a reasonable parent on notice that his or her child might commit the tort or crime that injured the victim." *Id.* at 726.

¶27 The Schwartzes point to the fact that Washington courts assess a parent's notice or knowledge of a child's dangerous proclivity by an objective rather than subjective standard, citing *Sun Mountain Products., Inc. v. Pierre*, 84 Wn. App. 608, 615-16, 929 P.2d 494, *review denied*, 132 Wn.2d 1003 (1997). But the stricter standard does not avail them. Apart from Joey's unrelated and insignificant disciplinary history (most of which the Schwartzes do not establish was or should have been known by the Elerdings), they rely for the Elerdings' objectively assessed knowledge only upon their contention that, like everyone, the Elerdings knew or should have known of the dangerous proclivity of all minors in possession of a gun. Once again, we reject their unsupported premise. Lacking sufficient evidence to present a jury question, their claim for negligent supervision was properly dismissed.

## III

¶28 We turn, finally, to the Schwartzes' negligent entrustment claim. Washington has adopted *Restatement (Second) of Torts* § 390, which provides that " '[o]ne who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm . . . is subject to liability for physical harm resulting to them.' " *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933-34, 653 P.2d 280 (1982).

¶29 *Bernethy* involved the acquisition of a gun from a gun shop by Robert Fleming, who had been drinking virtually nonstop for 24 hours and proved, later, to have had a blood alcohol content of 0.23. Early in the evening, he left his estranged wife and friends at a bar and walked to the gun shop, where he asked to see a 30.30 rifle for his son. When the salesman stepped aside to process the payment and paperwork, Mr. Fleming picked up the gun and ammunition and left, walked back to the bar, and shot and killed his wife. In support of its claim for negligent entrustment, his wife's estate presented affidavits from witnesses attesting to Mr. Fleming's obvious intoxication. The gun shop responded with the affidavit of the salesman and another customer that Mr. Fleming did not appear intoxicated.

¶30 The court observed that Washington did not have a statute specifically prohibiting the sale of rifles to intoxicated persons, but it was illegal under former RCW 9.41.080 (1935) to deliver a pistol to " 'any person under the age of twenty-one or to one who he has reasonable cause to believe has been convicted of a crime of violence, or is a drug addict, an habitual drunkard, or of unsound mind,' " a statute that it reasoned reflected, "at a minimum . . . a strong public policy in our state that certain people should not be provided with dangerous weapons." *Id.* at 932-33. It concluded

that the duty owed was best summarized by § 390 of the *Restatement*.

¶31 The Schwartzes argue that the Elerdings fall within the scope of liability contemplated by § 390 as suppliers of a shotgun who knew or had reason to know that "because of his youth" Joey was "likely . . . to use it in a manner involving unreasonable risk of physical harm." We do not dispute that supplying a firearm to a minor of some younger age could present a jury issue; illustration 11 to *Restatement* § 302B, for example, provides that giving an air rifle to a 6-year-old who then intentionally shoots at another, putting out his eye, could support a finding of negligence. But there was no evidence presented in this case from which a reasonable jury could find that in providing a shotgun, for hunting, to this safety-trained, licensed, apparently-law-abiding, historically responsible 17-year-old—a young man old enough to enlist in the armed forces—the Elerdings knew or had reason to know that it was likely he would use it in a manner involving an unreasonable risk of physical harm. Summary judgment here, too, was appropriate.

¶32 We affirm the summary judgment.

KULIK, C.J., and KORSMO, J., concur.

Review denied at 174 Wn.2d 1010 (2012).