# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| KELLY BOWMAN, | ) | No. 70706-0-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUNTRUST MORTGAGE, INC., a | ) | |
| Virginia corporation, a subsidiary of | ) | |
| SUNTRUST BANKS, INC.; FEDERAL | ) | |
| NATIONAL MORTGAGE | ) | |
| ASSOCIATION, a United States | ) | |
| government sponsored enterprise; | ) | |
| NORTHWEST TRUSTEE SERVICES, | ) | |
| INC., a Washington corporation; | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC.; a | ) | UNPUBLISHED OPINION |
| Delaware corporation; and DOE | ) | |
| DEFENDANTS 1-10, | ) | FILED: August 10, 2015 |
| | ) | |
| Respondents. | ) | |
| | ) | |

VERELLEN, A.C.J. — After Kelly Bowman's lender initiated a nonjudicial deed of trust foreclosure, Bowman filed a lawsuit for injunctive relief, declaratory judgment, and damages. He appeals the summary judgment orders dismissing his claims against SunTrust Mortgage Inc. (SunTrust), Federal National Mortgage Association (Fannie Mae), Northwest Trustee Services, Inc. (NWTS), and Mortgage Electronic Registration Systems, Inc. (MERS). He contends that genuine issues of material fact exist as to alleged violations of the deeds of trust act (DTA), chapter 61.24 RCW; Consumer Protection Act, (CPA), chapter 19.86 RCW; and Criminal Profiteering Act, chapter 9A.82

RCW. He also contends the trial court erred in accepting the testimony of SunTrust's assistant vice president Carmella T. Norman Young and in denying his CR 56(f) request to continue discovery.

As acknowledged by Bowman's counsel at oral argument, many of the issues raised in Bowman's opening brief are impacted by recent decisions.[1] Specifically, Trujillo v. Northwest Trustee Services, Inc. concluded that the beneficiary is not required to be both the holder and owner of the promissory note.[2] The holder of the note is the beneficiary and has authority under the DTA to appoint a successor trustee.[3] Trujillo resolves many of Bowman's DTA claims in favor of SunTrust, Fannie Mae, NWTS, and MERS. Bowman's other DTA arguments also fail.

We also conclude that the trial court did not err in admitting Young's declarations or abuse its discretion in denying Bowman's request for a continuance. And because no trustee's sale occurred, and Bowman identifies no genuine issue of material fact related to any deceptive, unfair, or criminal act by the respondents, the trial court properly dismissed his remaining claims.

Accordingly, we affirm.

---

[1] See Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 334 P.3d 529 (2014) (holding that the DTA did not create a cause of action for money damages for violations of that statute in the absence of a completed foreclosure sale); Lyons v. U.S. Bank Nat. Ass'n, 181 Wn.2d 775, 336 P.3d 1142 (2014) (holding that without a nonjudicial foreclosure sale, mortgagor was precluded from bringing a claim for damages against trustee under the DTA but was not precluded from alleging violations of the CPA).

[2] 181 Wn. App. 484, 501, 326 P.3d 768 (2014), review granted, 182 Wn.2d 1020, 345 P.3d 784 (2015).

[3] Id.

FACTS

Bowman borrowed $417,000 from SunTrust in September 2008. He executed a promissory note on September 4, 2008, secured by a deed of trust that was recorded on September 11, 2008. The deed of trust named MERS as beneficiary "solely as nominee for [SunTrust] and [SunTrust]'s successors and assigns" and Washington Administrative Services, Inc. as trustee.[4]

On or about October 1, 2008, Fannie Mae purchased the loan. As a Fannie Mae approved seller and servicer of residential mortgage loans, SunTrust retained the servicing rights for the loan and also maintained physical possession of the "wet ink" loan documents, including the note.[5]

Bowman defaulted on his loan obligations on June 1, 2010. On March 26, 2012, MERS executed a document purporting to assign both the deed of trust and the note to SunTrust.[6] The assignment stated that

> [MERS] hereby assigns unto [SunTrust], the said [d]eed of [t]rust having an original principle sum of $417,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and [MERS] hereby grants and conveys unto [SunTrust] [MERS]'s beneficial interest under the [d]eed of [t]rust.[7]

---

[4] Clerk's Papers (CP) at 476, 474.

[5] CP at 255.

[6] On October 25, 2012, a "corrective" assignment was recorded to reflect the addition of Bowman's wife, Natalia Bowman, as a co-borrower on the loan. CP at 50.

[7] CP at 43.

3

MERS executed this document even though SunTrust already had physical possession of the note indorsed in blank. On July 23, 2012, SunTrust executed and delivered to NWTS a sworn beneficiary declaration stating that it was the holder of the note.

On August 14, 2012, NWTS, as SunTrust's "duly authorized agent," served Bowman with a notice of default.[8] The notice of default itemized the amounts in arrears for the delinquent loan and provided Bowman certain contact information. The notice stated, "The owner of the note is Federal National Mortgage Association (Fannie Mae)," and "The loan servicer for this loan is SunTrust Mortgage, Inc."[9] Attached to the notice of default was a foreclosure loss mitigation form executed by SunTrust and dated July 21, 2012. The loss mitigation form stated:

> The undersigned beneficiary . . . hereby represents and declares under the penalty of perjury that . . . .
>
> . . . [t]he beneficiary . . . has contacted the borrower under, and has complied with, RCW 61.24.031 . . . .
>
> . . . .
>
> The undersigned further represents and declares under penalty of perjury that *SunTrust Mortgage, I[nc.] is the beneficiary and is the actual holder* of the promissory note or other obligation secured by the deed of trust.[10]

On November 8, 2012, SunTrust recorded an appointment of successor trustee naming NWTS "as successor trustee under the deed of trust with all powers of the original trustee."[11] On November 19, 2012, Nanci Lambert of NWTS signed a notice of

---

[8] CP at 45-48.

[9] CP at 47.

[10] CP at 48 (emphasis added).

[11] CP at 53.

trustee's sale, scheduling the nonjudicial foreclosure sale of Bowman's property for March 29, 2013. The signature was notarized on November 27, 2012. NWTS recorded the notice of trustee's sale on November 29, 2012. Attached to the notice of trustee's sale was a notice of foreclosure stating, "The attached Notice of Trustee's Sale is a consequence of default(s) in the obligation to the SunTrust Mortgage, Inc. of your Deed of Trust."[12] NWTS subsequently postponed the sale, and the sale never occurred.

On March 14, 2013, Bowman sued SunTrust, Fannie Mae, NWTS, and MERS for wrongful foreclosure, declaratory relief, and violations of the DTA, CPA, and Criminal Profiteering Act. NWTS, SunTrust, Fannie Mae, and MERS filed motions for summary judgment to dismiss Bowman's claims. In support of SunTrust's motion, Carmella T. Norman Young, SunTrust's assistant vice president in the foreclosure preparation department, submitted two declarations. In his brief in opposition to summary judgment, Bowman asked for a continuance under CR 56(f). The trial court granted summary judgment, dismissing all of Bowman's claims with prejudice.

Bowman appeals.

ANALYSIS

*Standard of Review*

This court reviews a trial court's grant of summary judgment de novo.[13] Engaging in the same inquiry as the trial court, we review the facts and all reasonable

---

[12] CP at 497.

[13] Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 381, 46 P.3d 789 (2002).

5

inferences from those facts in the light most favorable to the nonmoving party.[14]

"Summary judgment is appropriate if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law."[15] The initial burden is on the

moving party to show there is no genuine issue of any material fact.[16] "The burden then

shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue

for trial."[17] "In doing so, the nonmoving party may not rest upon mere allegations or

denials."[18]

### DTA Claims

Bowman argues that the note he signed contained a specific definition of "note

holder" as the "party *entitled to* payments as described within the document" and that,

as a result, "the Court need not resort to any other body of law" for its definition.[19] But

RCW 61.24.005(2) of the DTA broadly defines "beneficiary" as "the holder of the

instrument or document evidencing the obligations secured by the deed of trust."[20] As

our Supreme Court recognized in Bain v. Metropolitan Mortgage Group, Inc., the

Uniform Commercial Code (UCC) guides our interpretation of the DTA's terms.[21] The

---

[14] Id.

[15] Am. Exp. Centurion Bank v. Stratman, 172 Wn. App. 667, 673, 292 P.3d 128 (2012).

[16] CR 56(e); Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

[17] Stratman, 172 Wn. App. at 673.

[18] Id.; CR 56(e).

[19] Appellant's Supp. Br. at 2-3.

[20] RCW 61.24.005(2).

[21] 175 Wn.2d 83, 104, 285 P.3d 34 (2012).

UCC defines "holder" as the person in possession of the note that is payable either to bearer or to an identified person that is the person in possession.[22]

Here, the record reflects that SunTrust maintained physical possession of the note since the time of its making and that the note was indorsed in blank. Bowman provides no compelling authority that the specific definition in the note alters who the holder is for purposes of the UCC or who the beneficiary is for purposes of the DTA.[23] Thus, no matter who was ultimately "entitled" to the loan proceeds, SunTrust was the holder of note, which made it the beneficiary under the DTA.

Relying on UCC Article 9A, Bowman further argues that SunTrust's physical possession of the note was insufficient to give it the status of "holder" and "beneficiary" because it did not have requisite "legal possession" of the note.[24] Trujillo specifically rejected this same argument and concluded that nonjudicial foreclosure proceedings are not subject to UCC Article 9A, which governs security interests in notes.[25] Because we follow the holding in Trujillo, Bowman's argument fails.

Bowman alleges several other violations of the DTA and breaches of the trustee's duty of good faith. Most of those arguments are grounded in the premise that the beneficiary must be both the owner and holder of the note and that a mere loan servicer cannot appoint a successor trustee with authority to commence foreclosure.

---

[22] RCW 62A.3-201. If indorsed in blank, the note is payable to bearer. RCW 62A.3-205(b).

[23] Bowman's reliance on case law that the common law supplements UCC principles does not support the assertion that parties to a note may rewrite the UCC or the DTA.

[24] Appellant's Reply Br. at 7.

[25] Trujillo, 181 Wn. App. at 502-04.

In Trujillo, a borrower similarly argued that RCW 61.24.030(7)(a) requires that a person or entity be both the holder and the owner of a note to be a beneficiary eligible to enforce the note.[26] This court rejected that argument and concluded that "the required proof [under the second sentence of RCW 61.24.030(7)(a)] is that the beneficiary must be the holder of the note. It need not show that it is the owner of the note."[27] In reaching this conclusion, this court applied the common law and determined that it was the status of "holder" that entitled the entity to enforce the note.[28] Consistent with the Bain court's use of the UCC to interpret DTA terms, Trujillo held that under the UCC "a 'holder' may enforce the note 'even though the [holder] is not the owner' of the note."[29]

Bowman argues that we should not follow Trujillo. We do not find his arguments compelling. Based upon Trujillo, we reject Bowman's arguments that

> SunTrust was never a lawful beneficiary of the subject obligation and never had the authority to appoint NWTS to prosecute a non-judicial foreclosure.[30]

> [T]he 'beneficiary' declaration permitted by the second sentence [under RCW 61.24.030(7)] is a declaration that must be made by the *owner of the [n]ote*.[31]

> NWTS failed to comply with the DTA and its fiduciary duty of good faith.[32]

---

[26] Id. at 492.

[27] Id. at 501.

[28] Id. at 499-500 (citing John Davis & Co. v. Cedar Glen Four, Inc., 75 Wn.2d 214, 450 P.2d 166 (1969)).

[29] Id. at 501 (alteration in original) (quoting RCW 62A.3-301).

[30] Appellant's Br. at 18.

[31] Appellant's Reply Br. at 4.

[32] Appellant's Br. at 22.

Here, the notice of default expressly gave notice that the owner of the note was Fannie Mae and that the loan servicer was SunTrust. MERS expressly assigned its beneficial interest under the deed of trust to SunTrust. And the beneficiary declaration recited that beneficiary "[SunTrust] is the holder of the promissory note."[33] The DTA allows the successor trustee to rely on a beneficiary declaration.[34] Therefore, NWTS was properly appointed as successor trustee and had authority to commence the nonjudicial foreclosure.

Bowman's additional arguments that NWTS breached its duty of good faith are not persuasive.[35] Bowman contends NWTS breached its duty of good faith for its failure to investigate MERS' inconsistent role as beneficiary. But especially because NWTS could rely upon the unambiguous beneficiary designation, there is no showing that NWTS had any obligation to investigate further.

Bowman argues that the use of an "effective date" that predates the notarized signature on the notice of sale and notice of foreclosure is precluded under the standard recognized in Klem v. Washington Mutual Bank.[36] In Klem, our Supreme Court held that it was a breach of the duty of good faith to predate signatures to artificially advance the time frame for foreclosure.[37] Here, Jeff Stenman, vice president of NWTS, testified

---

[33] CP at 171.

[34] RCW 61.24.030(7).

[35] As trustee, NWTS had a duty of good faith. Bowman's suggestion that the trustee had a fiduciary duty is inconsistent with the legislature's 2008 clarification of the DTA. Bain, 175 Wn.2d at 93 n.4.

[36] 176 Wn.2d 771, 295 P.3d 1179 (2013).

[37] Id. at 794-95.

that NWTS "routinely include[s] an 'effective date' on the Notice of Sale which evidences the date of its drafting."[38] Under RCW 61.24.040(1)(f), the notice of trustee's sale must contain some date upon which arrearage figures are effective. Thus, here, the notice of foreclosure included a reinstatement amount as of November 19, 2012, the very "effective date" Stenman testified to in his declaration. It is logical the notice would list arrearage figures as of the date the document was drafted because otherwise, the amount could be viewed as outdated or speculative. Accordingly, there is no showing that the "postdating" was a source of benefit to the trustee or detriment to Bowman.

Bowman contends that the notice of trustee's sale and notice of foreclosure "failed to substantially comply" with the DTA and "provided false and/or misleading information."[39] But the respondents did not conceal Fannie Mae's ownership of the note. Both the notice of trustee's sale and notice of foreclosure were consistent with the information in the notice of default that Fannie Mae was the loan owner and SunTrust was the loan servicer. Additionally, the loss mitigation form attached to the notice of default recited that SunTrust was the beneficiary and actual holder of the note. Both the notice of sale and notice of foreclosure substantially complied with the DTA and accurately referred to SunTrust as the beneficiary. Accordingly, Bowman does not establish a violation of the duty of good faith.[40]

---

[38] CP at 636-37.

[39] Appellant's Br. at 26.

[40] See RCW 61.24.040(1)(f), (2) (the notices must only "substantially" follow the statutory forms); Trujillo, 181 Wn. App. at 509.

Bowman contends that MERS invalidly assigned the note and the deed of trust to SunTrust. Further, he argues that there is no showing that SunTrust was an agent with authority to act on Fannie Mae's behalf. But Bowman provides no authority that such a showing is required. SunTrust was the holder of the note and therefore had authority to appoint NWTS as a successor trustee to pursue a foreclosure.

Finally, as to any claim for damages under the DTA, Frias confirms that there is no such implied cause of action if there has not been a foreclosure sale.[41]

### CPA Claim

Bain and Lyons recognize that a violation of the DTA may support a claim for damages under the CPA if a borrower can establish an unfair or deceptive act or practice.[42] Bowman suggests that the inclusion of MERS in the deed of trust had the capacity to deceive and therefore qualifies as an unfair or deceptive act or practice under the CPA. We disagree.

One of the five elements required to prevail on an action for damages under the CPA is an "'unfair or deceptive act or practice.'"[43] To prove that an act or practice is deceptive, "[a] plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public."[44] In Bain, our Supreme Court held that MERS' representation that it was the beneficiary of the deed of trust in its own right, rather than as an agent for a disclosed principal, had

---

[41] Frias, 181 Wn.2d at 417.

[42] Bain, 175 Wn.2d at 115-20; Lyons, 181 Wn.2d at 784-87.

[43] Bain, 175 Wn.2d at 115 (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

[44] Hangman Ridge, 105 Wn.2d at 785.

11

the capacity to deceive within the meaning of the CPA since MERS was not the note holder and did not have authority to appoint a trustee to enforce the note.[45] But because it was "likely true" that "lenders and their assigns are entitled to name [MERS] as their agent," the court stated that "nothing in this opinion should be construed to suggest an agent cannot represent the holder of a note."[46] Accordingly, Bain establishes that "the mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury."[47]

Bowman's only other specific argument based upon the CPA is that "the improper appointment of NWTS" was an unfair and deceptive act or practice.[48] But as discussed above, the appointment of NWTS was not improper. Because Bowman has failed to establish an unfair or deceptive act or practice, we need not consider whether he has established the remaining elements of a CPA claim.[49]

### Criminal Profiteering Act Claim

Bowman's final cause of action asserted a violation of the Criminal Profiteering Act, which makes unlawful an attempt by "any person knowingly to collect any unlawful debt."[50] We find no merit in his claim.

---

[45] Bain, 175 Wn.2d at 117.

[46] Id. at 106.

[47] Id. at 120.

[48] Appellant's Br. at 30.

[49] Sorrel v. Eagle Healthcare, Inc., 110 Wn. App. 290, 298, 38 P.3d 1024 (2002) ("Failure to establish even one of the elements is fatal to a CPA claim.").

[50] RCW 9A.82.045.

To avoid summary judgment, Bowman would have had to show that he could prove, among other things, "an act of criminal profiteering that is part of a pattern of criminal profiteering activity."[51] "Criminal profiteering" is "any act, including any anticipatory or completed offense, committed for financial gain, that is chargeable or indictable under the laws of the state in which the act occurred."[52]

Bowman fails to identify any act by the respondents that qualifies as criminal profiteering.[53] Accordingly, the trial court properly dismissed his claim.

*Declarations of Carmella T. Norman Young*

Bowman challenges the admissibility of the declarations of Carmella T. Norman Young. He contends that Young's declarations should be regarded as unreliable because of details she omitted:

> [Young] failed to provide the trial court facts that would establish (1) the computer equipment used by SunTrust is standard; (2) the identity of who compiled the information contained in the computer printouts; (3) a statement of how the information is maintained; (4) when the entries were made and whether they were made at or near the time of the happening or event; and (5) how SunTrust relies on these records.[54]

We find no merit in his arguments.

---

[51] RCW 9A.82.100(1)(a).

[52] RCW 9A.82.010(4).

[53] See Zalac v. CTX Mortgage Corp., C12-01474 MJP, 2013 WL 1990728, at *4 (W.D. Wash. May 13, 2013) (dismissing plaintiff's criminal profiteering claim because he failed to allege specific facts to support his claim); RCW 9A.82.010(4)(k), (p); RCW 9A.82.045.

[54] Appellant's Br. at 9.

This court reviews the admissibility of evidence in summary judgment proceedings de novo.[55] CR 56(e) mandates that "[a]ffidavits and declarations supporting and opposing a motion for summary judgment 'must be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matter.'"[56] In Discover Bank v. Bridges, the personal knowledge requirement was satisfied where employees had access to the debtors' account records in the course of their employment, made their statements based on personal knowledge and review of the records and under penalty of perjury, and the attached account records were true and correct copies made in the ordinary course of business.[57] The Uniform Business Records as Evidence Act provides that a business record is admissible as competent evidence where

> the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.[58]

Like the declarants in Bridges, Young, an assistant vice president of SunTrust, specifically established that she was making her declaration "on the basis of personal knowledge and on the basis of the review of records regularly kept by SunTrust in the

---

[55] Stratman, 172 Wn. App. at 674-75.

[56] Nat'l Union Ins. Co. of Pittsburgh, Pa. v. Puget Sound Power & Light, 94 Wn. App. 163, 178, 972 P.2d 481 (1999) (quoting Sun Mountain Prods., Inc. v. Pierre, 84 Wn. App. 608, 616, 929 P.2d 494 (1997)).

[57] 154 Wn. App. 722, 726, 226 P.3d 191 (2010).

[58] RCW 5.45.020.

course of its business with which I am personally familiar."[59] "A true and correct copy of the promissory note evidencing [Bowman's] loan and bearing an endorsement in blank by SunTrust" was attached to her declaration.[60] SunTrust "maintained physical possession of the 'wet ink' loan documents, including the [n]ote" after the loan was sold to Fannie Mae.[61] "SunTrust has maintained physical possession of the [n]ote since on or about September 5, 2008 in its corporate vault located in Richmond, Virginia."[62] And Young again confirmed "[t]he records I am relying upon for this information are records that are regularly kept by SunTrust in the course of business, made at or near the time of the acts, conditions or events reflected in the records, and regularly relied upon by SunTrust for the information about which I am now testifying."[63] Thus, Young's declarations satisfy the requirements of CR 56(e) and The Uniform Business Records as Evidence Act.

Bowman offers other lack of foundation arguments. Citing to Blomster v. Nordstrom, Inc., Bowman argues that Young's testimony fails to meet the requirements of CR 56(e).[64] But Young's testimony was not a "mere averment" or conclusory

---

[59] CP at 254, 664.

[60] CP at 254.

[61] CP at 255.

[62] CP at 255.

[63] CP at 255; see Bridges, 154 Wn. App. at 726; State v. Quincy, 122 Wn. App. 395, 399, 95 P.3d 353 (2004) (holding that computerized price records of stolen items were admissible as business records and stating, "It is not necessary that the person who actually made the record provide the foundation."). Additionally, Bowman provides no authority that "the identity of who compiled the information contained in the computer printouts" is required to make Young's declarations admissible. Appellant's Br. at 9.

[64] 103 Wn. App. 252, 11 P.3d 883 (2000).

statement of blanket personal knowledge as prohibited under CR 56(e). Her testimony related to Bowman's specific promissory note, which was attached to her declaration. Furthermore, it referenced Bowman's "wet ink" loan documents, in particular, the note, which remained in SunTrust's vault since its making.

Lastly, Bowman argues that the declarations are not admissible as business records because Young failed to establish that the computer equipment used by SunTrust was standard. However, a declarant does not need to prove that the computer equipment is standard "where no question is raised concerning the reliability of the computer-generated evidence."[65] Here, Bowman does not point to anything in the record that demonstrates a concern regarding the reliability of SunTrust's computer equipment. Accordingly, the Young declarations and attached business records were properly admitted.

### CR 56(f) Continuance

Bowman contends that the trial court erred in denying his request for a CR 56(f) continuance. We disagree.

This court reviews a trial court's denial of a CR 56(f) motion for a continuance for an abuse of discretion.[66] CR 56(f) provides that

> [s]hould it appear from the affidavits of a party opposing the motion that for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

---

[65] State v. Kane, 23 Wn. App. 107, 112, 594 P.2d 1357 (1979).

[66] Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176 Wn. App. 168, 183, 313 P.3d 408 (2013), review denied, 179 Wn.2d 1019 (2014).

A party seeking such a continuance must provide an affidavit identifying the evidence the party seeks and how that evidence will raise an issue of material fact precluding summary judgment.[67] A court may deny a CR 56(f) continuance when "'(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'"[68]

Bowman did not file a CR 56(f) motion, nor did he file an affidavit. He made his request for a continuance at the end of his memorandum in opposition to the respondents' motions for summary judgment. Most importantly, Bowman made no showing of good cause as to how he expected additional information to impact the issues here. Notably, SunTrust had produced Bowman's entire loan file, which included 1,400 pages of responsive documents. Bowman fails to demonstrate how additional evidence would have raised a genuine issue of material fact in light of Trujillo. We conclude that the trial court did not abuse its discretion by denying Bowman's CR 56(f) request for a continuance.

### Attorney Fees

SunTrust argues it is entitled to appellate fees and costs. RAP 18.1(a) provides that a prevailing party may recover its reasonable appellate attorney fees and expenses

---

[67] Durand v. HIMC Corp., 151 Wn. App. 818, 828, 214 P.3d 189 (2009).

[68] Baechler v. Beaunaux, 167 Wn. App. 128, 132, 272 P.3d 277 (2012) (emphasis omitted) (quoting Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

if applicable law grants a party the right to recover these fees and expenses. Here, the deed of trust provides that SunTrust

> shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Investment. The term 'attorneys' fees', whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by [SunTrust] . . . on appeal.[69]

Bowman's promissory note also contains an attorney fees and costs provision. As the issues involved in this appeal were resolved in SunTrust's favor, its reasonable attorney fees and costs incurred in connection with this appeal are awarded upon compliance with RAP 18.1.

We affirm.

WE CONCUR:

Leach, J.

Becker, J.

---

[69] CP at 34.